[Civ. No. 884.   Third Appellate District.—January 8, 1912.]

AARON SIMINOFF, Appellant, v. JAS. H. GOODMAN & CO. BANK, a Corporation, Respondent.

BANKS—DISHONOR OF TRADER'S CHECKS—MEASURE OF DAMAGES—CONSTRUCTION OF CIVIL CODE — DAMAGES PROXIMATELY CAUSED. — A trader, who is a depositor in a bank incorporated under the laws of this state, whose checks have been wrongfully dishonored, is not limited to damages under section 3302 of the Civil Code, to the amount due for breach of contract, "with interest thereon," and which has no further application; but is properly entitled, under section 3300 of that code, to the measure of damages "for the breach of an obligation *arising* from contract," which is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the nature of things, would be likely to result therefrom," or for a *wrong* under section 3333 of that code, the measure of damages for which is the same, "whether it could have been anticipated or not."

ID.—COMMERCIAL INTEREST INVOLVED IN HONOR OF TRADERS' CHECKS— DISHONOR A GRIEVOUS WRONG.—The whole commercial community

and every interest dependent upon commerce are affected by the honor of traders' checks; and the courts should hold banks to the proper performance of their duty to their trader depositors. The consequences to a trader from the dishonor of his checks is so notorious that no bank can justly affect ignorance of what the whole commercial world is vividly alive to. The dishonor of a trader's check without right is a grievous wrong, since the drawer's credit suffers, and a ·single wrongful refusal to honor his check might work his ruin as a business man.

ID.—CONSTRUCTION OF CODE IN RELATION TO COMMON LAW.—The Civil Code, establishes the law of this state in so far as it departs from the common law, and where its provisions are in harmony therewith, they are to be interpreted in the light of the common law, and where the code is silent the common law governs.

ID.—COMMON-LAW RULE AS TO DISHONOR OF BANK CHECKS—SUBSTANTIAL DAMAGES — CASE OF TRADER.—At common law substantial damages may be recovered against a banker for dishonoring the check of a depositor when there is sufficient money in the banker's hands at the time to meet the check. Whenever the bank fails to fulfill its agreement with the depositor to honor his check, the depositor, by proving its dishonor, is always entitled to recover substantial damages. In the case of a trader, from the fact of his dishonored check, injury to his credit may be inferred, and substantial damages may be given on proof of that fact.

ID.—EFFECT OF WRONGFUL ACT OF BANK—IMPUTATION OF DISHONESTY —FELONY.—The wrongful act of the bank in refusing to honor a proper check not only imputes insolvency, dishonesty or bad faith to the drawer, and has the effect of slandering him in his business, but, in this state, it being a felony to draw or utter to another person a check on a bank knowing at the time that he has not sufficient funds in his hands to meet such check, its dishonor by falsely indorsing it "no funds" suggests a possible case of felony under the law of this state.

ID.—PLEADING — SPECIAL DAMAGES NOT CLAIMED — SUFFICIENT COMPLAINT—DAMAGES PROXIMATELY CAUSED—SUBSTANTIAL DAMAGES.— Where no special damages are claimed, none need be pleaded. The complaint shows a case for only such damages as may be shown to have been proximately caused by defendant's breach of duty alleged. It is immaterial whether the facts alleged show the breach of an obligation arising from contract under section 3300 of the Civil Code, or from a wrong under section 3333 thereof, since the rule of damage is substantially the same. Substantial damage is the natural and probable consequence of the act; and a substantial recovery may be had therefor without pleading or proof of special injury. If the depositor is a merchant or trader, substantial damage will be presumed from dishonor, without further proof.

ID.—CODE PLEADING—FORM OF ACTION IMMATERIAL.—Under our system of code pleading, the form of the action is immaterial. The pleader may make a plain statement of the facts, and may recover as damages on the facts stated whatever the law will allow, whether arising from contract or from tort.

APPEAL from a judgment of the Superior Court of Napa County, and from an order denying a new trial. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

J. J. Dunne, and Chas. E. Trower, for Appellant.

Frank L. Coombs, and Nathan F. Coombs, for Respondent.

CHIPMAN, P. J.—The question presented in this case is whether the complaint states a cause of action. The complaint was filed on September 27, 1909, and sets forth six causes of action. In the first cause of action, it alleges that the defendant was and is a banking corporation organized under the laws of this state, and conducting a general banking business and acting as a banking corporation, with its principal office and place of business located in the city of Napa in Napa county. It is next alleged that, at all the times involved, the plaintiff was a trader in good financial standing and credit, and engaged in the business of manufacturing, selling and dealing in ladies' cloaks and suits in said city of Napa; and that he was a customer of and depositor with the defendant, and had and kept a banking account with defendant, subject to his, said plaintiff's, checks. It is then alleged that, from June 16 to June 19, 1909, plaintiff had in defendant bank a balance due and owing him exceeding the sum of $21.05, subject to plaintiff's checks; that, on June 16, 1909, plaintiff drew his check number 627 on defendant bank, for $21.05, payable to the order of Meyer Cloak Company, in payment for an indebtedness then owing by plaintiff to said Meyer Cloak Company, and delivered said check to said Meyer Cloak Company in payment for said indebtedness; that said Meyer Cloak Company, immediately upon receipt of the check, caused it to be presented to defendant bank for payment, properly indorsed, during business hours, and in the

usual course of business; but that defendant bank, notwithstanding that it then had sufficient funds belonging to plaintiff on deposit with it wherewith to honor said check, refused to pay said check, and marked the same "no funds," and returned the check to Meyer Cloak Company dishonored. It is then alleged that, by reason of the foregoing acts and conduct of defendant bank, plaintiff has suffered and sustained damage in the sum of $75,000, in this, that is to say, by reason of the foregoing acts and conduct of defendant bank, plaintiff has suffered great injury in his name and credit with said Meyer Cloak Company and others, and his standing as a reputable merchant has been lost, and his credit destroyed.

The remaining five causes of action are based on similar facts as to five other checks, drawn in favor of different firms, in sums varying from $3.75 to $287.45, all of which were returned to the payees dishonored. Four of these checks were drawn on June 12, 1909, and two of them on June 16, 1909, and all shared the same fate, although defendant, as is alleged, had funds in its hands to the credit of plaintiff sufficient to meet the same.

The question of importance to be determined is whether section 3302 of the Civil Code prescribes the only measure of damages in cases of this character, or, in fact, was intended to apply to such cases at all. It reads: "The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon." This section is found, among others, in chapter II, article I of part II, and is designated by its subhead, or what may be termed its syllabus, to pertain to cases for "breach of contract to pay liquidated sum." Section 3300 of the same code and part of the same article provides: "For the breach of an obligation *arising* from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

Article II of the same part, in general, relates to "damages for wrongs." Section 3333 is as follows: "For the breach of an obligation *not* arising from contract, the measure of damages, except where otherwise provided by this code, is the

amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.''

The same code defines an obligation to be ''a legal duty, by which a person is bound to do or not to do a certain thing'' (Civ. Code, sec. 1427); and may arise ''either from the contract of the parties, or by operation of law,'' in which latter case it ''may be enforced in the manner provided by law, or by civil action or proceedings.'' (Id., sec. 1428.) It will be observed that the code furnishes a different measure of damages for breaches of obligations ''to pay money only'' and breaches of obligations *arising* from contracts generally, and from obligations not arising from contract, i. e., from wrongs.

The position taken by respondent is that ''section 3302 controls the measure of damages to the exclusion of every other section of the code, and to the exclusion of every other principle of law,'' and this results, as is claimed, from ''the relation of debtor and creditor existing between the depositor and the bank.'' Furthermore, ''that there is no other obligation, the breach of which is alleged, and no other is anticipated by the contract; that if there is an element of tort about the act of refusal to pay for which a different rule may apply as to the measure of damages, the nature and character of the circumstances must be alleged and shown, and special damages pleaded.''

Appellant contends, as does respondent, that the cause of action rests upon the duty of the bank toward its depositors, but it is claimed by appellant that this duty is not alone that of debtor and creditor, but ''that upon the proper presentation of a proper check by a proper person, there being sufficient funds on deposit to the credit of the drawer of the check, it is the duty of the bank promptly to honor the check, subject, of course, as Mr. Morse points out (2 Banks and Banking, sec. 445), to the right of the bank to take a reasonable time to make inquiries in cases in which suspicious circumstances appear. . . . That the whole commercial community, and every interest dependent upon commerce, are affected by the honor of traders' checks,'' and that ''the courts should hold banks to the proper performance of their duties to their trader depositors.'' It is further contended by appellant that, whether the alleged cause of action be treated as upon con-

tract or in tort is, in this state, immaterial upon the question of damages; because we have but a single form of action, in which nothing more is necessary than to state the facts and pray for the appropriate relief; "that in actions for damages for breach of contract, the parties need not to have consciously anticipated the precise damages which would flow from the breach, but, as our supreme court points out (*Hunt Bros. Co.* v. *San Lorenzo Co.*, 150 Cal. 51, 56, 57, [7 L. R. A., N. S., 913, 87 Pac. 1093]), will be taken to have contemplated all damages which they ought, as reasonable persons exercising their faculties with reasonable prudence and discretion, to have contemplated; because no one can escape liability by the simple expedient of closing his eyes to what he would have seen if he had but looked; and because the consequences to a trader from the dishonor of his checks is so notorious that no bank can justly affect ignorance of what the whole commercial world is vividly alive to; . . . that the obligation to pay a trader's check involves something more than the mere discharge of a debt—involves something more in its aims and consequences than a mere 'obligation to pay money only'; and that section 3302 cannot furnish a just measure of the damages suffered by a trader through the dishonor of his checks."

An examination of section 3302, when considered in its relation to other sections of the same title, and when construed as we are told by section 1858 of the Code of Civil Procedure it must be construed (i. e., that "the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein"), will show that the section deals only and solely with contractual relations, and is intended to define the detriment caused by some breach of a contract to pay a liquidated amount. It does not attempt to provide a measure of damages in the large number of cases where the cause of action is "for the breach of an obligation *arising* from contract" (Civ. Code, sec. 3300); or "for the breach of an obligation *not* arising from contract" (sec. 3333), i. e., for torts or wrongs or breaches of obligations arising by operation of law, or implied obligations. And it is not to be forgotten that, although the code establishes the law of this state respecting the subjects to which it relates, it "does not mean that there is no law with respect to such subjects except

that embodied in the code. . . . Where the code is silent, the common law governs." (*Estate of Apple,* 66 Cal. 432, 434, [6 Pac. 7] ; *Peters* v. *Peters,* 156 Cal. 32, 34, [23 L. R. A., N. S., 699, 103 Pac. 219] ; Pol. Code, sec. 4468.)

In an illuminating article by Professor Pomeroy, published in volumes 3 and 4 of the West Coast Reporter, reprinted in an appendix to appellant's reply brief, that distinguished author says: "Except in the comparatively few instances where the language is so clear and unequivocal as to leave no doubt of an intention to depart from, alter, or abrogate the common-law rule concerning the subject matter, the courts should avowedly adopt and follow without deviation the uniform principles of interpreting all the definitions, statements of doctrines, and rules contained in the code in complete conformity with the common-law definitions, doctrines, and rules, and as to all subordinate effects resulting from such interpretation." This view is urged because of the "peculiar excellencies, acknowledged by all able jurists to belong to" the common law; because "the Civil Code, as a matter of fact, was not designed to make any general alterations in the established doctrines and rules of the common law"; and because "the Civil Code does not embody the whole law concerning private and civil relations, rights, and duties; it is incomplete, imperfect and partial."

It seems to be conceded by respondent, which is undoubtedly true, that, at common law, substantial damages may be recovered against a banker for dishonoring the check of a depositor, there being sufficient money in his hands at the time to meet it. The rule prevailing in this country, in states where the question has arisen, is given in volume 5, American and English Encyclopedia of Law, second edition, pages 1059, 1060, as follows: "The relation between the bank and the depositor is that of debtor and creditor. The bank, in consideration of the deposit or loan, impliedly agrees with the depositor that whenever a demand is made by the presentation of a genuine check in the hands of a person entitled to receive the amount, the check will be honored to the amount of funds on deposit. And whenever the bank fails to fulfill this agreement with the depositor, by a failure to honor the check when duly presented, a right of action at once accrues. The depositor, by proving such loss, is always entitled to recover

substantial damages. But, if unable to show any such loss or injury, the better opinion seems to be that he would still be entitled to recover such moderate damages as the jury should judge to be a fair and reasonable compensation for the injury which he must have sustained; for it is almost impossible for a check to be dishonored without reflecting upon the character and credit of the drawer, the extent of the injury being within the peculiar province of the jury to determine.''

Mr. Morse says: ''The duty of the bank to make such payments (i. e., payment of checks on presentation, the bank having sufficient funds of the drawer), and the reciprocal right of the depositor to have them made, arise from the contract to that effect which, though probably never definitely expressed, will always be considered to be implied from the usual course of the banking business. This duty and this right are so far substantial, that, if the bank refuses, without sufficient justification, to pay the check of the customer, the customer has his action for damages against the bank.'' (2 Morse on Banks and Banking, 4th ed., sec. 458.) The supreme court of this state, in *Janin* v. *London & S. F. Bank*, 92 Cal. 14, 22, 23, [27 Am. St. Rep. 82, 14 L. R. A. 320, 27 Pac. 1100], said: ''It is well settled that a bank, in receiving ordinary deposits, becomes the debtor of the depositor, and its implied contract with him is to discharge this indebtedness by honoring such checks as he may draw upon it.'' This implied obligation or duty out of which arises an action for nonperformance, is that payment will be made on presentation and is an obligation different from and in addition to that existing ordinarily between debtor and creditor. ''These dealings in bank checks stand upon peculiar grounds. The exigencies of trade do not admit of the delays attending the process of acceptance, or arising from the efflux of days of grace. If the drafts are delayed; if the bank, being in funds, be at liberty to refuse payment—the inevitable consequence to the parties disappointed can be none other than such as the want of scrupulous punctuality always inflicts. The drawer's credit suffers; and it is well known that for this injury a depositor is entitled to his action against the bank.'' (*Fogarties* v. *State Bank*, 12 Rich. (S. C.) 518, [78 Am. Dec. 468].) A single refusal to honor a check might work

the ruin of a business man.   That the returning of a check by a bank to the payee, indorsed "no funds," would necessarily tend to injure the credit and business standing of the drawer of the check is a proposition so obvious as to need no argument to establish its truth.   "It is almost impossible for a check to be dishonored without reflecting upon the character and credit of the drawer, the extent of the injury being within the peculiar province of the jury to determine." (5 Am. & Eng. Ency. of Law, 2d ed., 1060; 2 Morse on Banks and Banking, sec. 458.)   And it is equally obvious that the rule contended for by respondent would furnish no adequate measure of the damage suffered in such a case.   (1 Sutherland on Damages, 3d ed., sec. 77.)   In a Pennsylvania case, where the ruling of the trial court was held to be correct, in refusing to charge the jury "that the mere loss of credit by the plaintiff is not a ground for damages, unless it be immediately connected with some tangible pecuniary loss of which it was the cause," the court said:.``A bank is an institution of *quasi*-public character.   It is chartered by the government for the purpose, *inter alia*, of holding and safely keeping the moneys of individuals and corporations.   It receives such moneys upon an implied contract to pay the depositor's checks upon demand.   Individual and corporate business could hardly exist for a day without banking facilities.   At the same time, the business of the community would be at the mercy of banks if they could at their pleasure refuse to honor their depositors' checks and then claim that such action was the mere breach of an ordinary contract for which only nominal damages could be recovered unless special damages were proven.   There is something more than a breach of contract in such cases."   (*Patterson* v. *Marine National Bank,* 130 Pa. 419, [17 Am. St. Rep. 778, 18 Atl. 632, 633].)

In this state it is a felony for a person to willfully, with intent to defraud, make or draw or utter to another person a check on a bank, knowing at the time that he has not sufficient funds in such bank to meet such check.   (Pen. Code, sec. 476a.)   In *Svendsen* v. *State Bank,* 64 Minn. 46, [58 Am. St. Rep. 522, 31 L. R. A. 552, 65 N. W. 1086], the supreme court placed the rule "on the ground that the wrongful act of the banker in refusing to honor the check imputes insolvency, dishonesty, or bad faith to the drawer of the check

and has the effect of slandering him in his business," and it was there held that the position "that an action of tort cannot be maintained in such a case as this, and that plaintiff's only remedy is an action on contract, in which only nominal damages can be recovered, is not sustained by the authorities." When, in this state, a bank returns to the payee a check with the indorsement "no funds," the act at once suggests not only what the Minnesota court says it imports, but it suggests a possible violation of a penal statute punishable as a felony. And yet, as respondent contends, the only redress is in an action in assumpsit for money had and received, with interest. The Massachusetts court said: "In the case of a trader, injury to his credit may be inferred from the fact he is a trader, and substantial damages may be found and given, on proof of that fact, without anything more." (*Wiley* v. *Bunker Hill Nat. Bank*, 183 Mass. 495, [67 N. E. 655].)

When our Civil Code says that "for every wrong there is a remedy" (section 3523), it means a remedy in some degree commensurate with the injury inflicted. The books abound in decisions holding that the dishonor of a trader's check is a grievous wrong. Lame and impotent, indeed, must be that system of remedies that furnishes no adequate relief in such cases. We cannot bring ourselves to believe that section 3302 of the Civil Code was intended to take away a right of action universally conceded to exist elsewhere. No reason can be suggested why banks in this state should enjoy such immunity. It is no sufficient answer to the cases cited, and numerous others to like effect, that in those jurisdictions no statutory rule of damages, as we have in section 3302, is enacted. That the rule is firmly established, though not by legislation, in the states alluded to, by judicial decisions coming down to us from the common law cannot be questioned, and it has never been held to take away the right of action contended for by appellant. The rule, prescribed by our code as a measure of damages, has been elsewhere held to apply solely to the limited class of cases referred to therein, namely, for breaches of obligations to pay money only, i. e., liquidated demands. Before we should feel authorized to hold that the rule laid down in section 3302 was intended to furnish the only measure of damage in such a case as we have

here, it should be made to appear clearly from the terms of the statute that such was its intention, which we do not think does so appear. (Mr. Pomeroy's article, *supra.*)

Whether the facts alleged bring the case within section 3300, Civil Code, as a breach of an obligation arising from contract, or within section 3333, Civil Code, for a wrong, i. e., a breach of an obligation not arising from contract, is not very material. The measure of damage is substantially the same in both cases. In a sense, here the injury arises from contract, and in a sense it is independent of contract and sounds in tort. But, viewed in either sense, section 3302 has no application to the facts alleged.

It has been sufficiently shown, contrary to respondent's contention, that the relation between a trader depositor and a bank is something more than that of debtor and creditor. The complaint alleges the breach of an obligation beyond that arising from the simple relation of debtor and creditor—an obligation implied by the peculiar circumstances surrounding the parties in that relation, and an obligation which, in the nature of these circumstances, must have been anticipated by the parties. So far as the element of tort is involved in the conduct of the defendant, we do not think, as is claimed by defendant, that "the nature and character of the circumstances must be alleged and shown and special damages pleaded," in order to maintain the action. Special damages are not claimed. Only such damages as might be shown to have been proximately caused by defendant's breach of duty are claimed. (Civ. Code, secs. 1427, 1428.) The averments of the complaint are sufficient to show the violation of defendant's obligation, for which the law authorizes substantial damages. Actual compensation to the injured party, whether caused by tort or breach of contract, is the first object of the law. "Every invasion of a legal right is presumed in law to cause an injury, and, though none is shown, there may nevertheless be a recovery of nominal damages with costs of the action. Such recovery is a judicial recognition of the right and an admonition that it cannot be invaded with impunity. The relation between banker and depositor is one of contract. The right of the latter is that, to the extent of his credit balance subject thereto, his checks drawn and presented according to the customs and usages of the business, shall be

promptly honored. For a breach of this right an action for damages will lie. If the depositor is a merchant or trader, it will be presumed, without further proof, that substantial damages have been sustained. This rule proceeds upon the fact commonly recognized that the credit of a person engaged in such a calling is essential to the prosperity of his business, and the dishonoring of his checks is plainly calculated to impair it and to inflict a most serious injury. In common opinion, substantial damage is the natural and probable consequence of the act, and therefore a substantial recovery may be had, without pleading or proof of special injury." (*Third National Bank* v. *Ober,* 178 Fed. 678, [102 C. C. A. 178]. See authorities in note, 5 Cyc. 535.) In *Heister* v. *Loomis,* 46 Mich. 6, [10 N. W. 60], Mr. Justice Cooley points out a distinction sometimes drawn in awarding damages where breaches of contract are involved and in cases of tort. In the former the damage allowed is because of something which could have been foreseen and reasonably expected; in the latter "the plaintiff does not assist in making the case; it is made for him against his will." The learned jurist then says: "To deny the injured party the right to recover any actual damages in such cases because they are of a nature which cannot be certainly measured, would be to enable parties to profit by and speculate upon their own wrongs, encourage violence, and invite depredation." He adds that "Where the damages are such as do not follow the injury as a necessary consequence, they should be specially alleged in the declaration." But all the authorities agree that more or less injury necessarily follows the dishonor of a trader's check. Besides, Judge Cooley is speaking of actions generally and not particularly of the dishonor of a trader's check. In his work on Torts, the author says: "The refusal of a bank to pay the plaintiff's check to a third party, though having sufficient funds of the plaintiff to meet it, is in the nature of a slander upon the plaintiff's credit and business, and renders the bank liable for substantial damages, though no actual damages are proven, *when the plaintiff is engaged in trade or business.*" (1 Cooley on Torts, 3d ed., p. 396.) Among the cases cited in the note and in the text is *Schaffner* v. *Ehrman,* 139 Ill. 109, reported, also, in 32 Am. St. Rep. 192, 28 N. E. 917, and 15 L. R. A. 134, which last has a note on

the question.   The opinion in that case was on petition for
rehearing and is a careful review of the English and Ameri-
can cases.   It was there held that the bank was liable for
more than nominal damages, without any proof of actual
loss or damage, although the refusal to pay the check was
the result of a clerk's mistake.   Craig, J., dissented, holding
that, under the circumstances appearing at the trial, only
nominal damages were recoverable.   No dissenting voice is
found to go beyond this, and even in that view the complaint
here is sufficient.   Judge Cooley quotes from the opinion,
where it is said: "It is well understood that an action for
slander by a person for the speaking of slanderous words
of him in the way of his trade, the fact that he is a trader,
takes the place of special damages.   To return a check marked
'refused for no funds' to the holder, especially through a
clearing-house, certainly tends to bring the drawer of that
·check into disrepute as a person engaged in mercantile busi-
ness, and it needs no argument to show that a single refusal
might often, and frequently does, bring ruin upon a business
man; and yet it is no more possible in either case to prove
special or actual damages than it is for one charged with the
commission of a crime to show specially in what manner he
has been injured."   It was said in *Arzaga* v. *Villalba*, 85
Cal. 111, [24 Pac. 656], "Every action is now, in effect, a
special action on the case. . . . Does the complaint state
in ordinary and concise language facts sufficient to con-
stitute a cause of action?   That is the question, and not
whether it is sufficient to show trespass *quare clausum*, trespass
*vi et armis*, or any other technical form of action, *ex delicto*
or *ex contractu*. . . . Under our system, if the facts alleged
and proved are such as would have entitled the plaintiff to
relief under any of the recognized forms of action at com-
mon law, they are sufficient as the basis of relief, whatever
it may be."   In harmony with this view, universally taken
where the reformed procedure is adopted, the supreme court
of Iowa said: "The pleader simply makes a plain statement
of the facts, avoiding legal conclusions, and may recover as
damages, on the facts stated, whatever the law will allow,
either for breach of contract or for the tort pleaded."   (*Ment-
zer* v. *Western Union Tel. Co.*, 93 Iowa, 752, [57 Am. St.
Rep. 294, 28 L. R. A. 72, 62 N. W. 1].)   And so it was held,

in *Lorick* v. *Palmetto Bank & T. Co.,* 74 S. C. 185, [7 Ann. Cas. 818, 54 S. E. 206]: ''The liability of a bank to its depositor for substantial damages, temperate in amount, for refusing to pay his check, not exceeding his credit, is generally if not universally recognized. And it is not necessary to recovery that there should be proof of special damages, the law presuming that the result is injury to the credit of the depositor from the general experience of men in such transactions.'' The cases are extensively considered in the opinion.

In the case here it seems plain that the cause of action grew out of or arose from contract, in the sense that it never would have arisen but for the original contractual relation; still there is in it an element of tort or wrong—a violation of duty; and we have seen that damages are allowable in whatever view the case may be regarded; hence we think the form of the action is immaterial. The case is analogous to the frequently occurring cases arising in breaches of contract for the transportation of passengers by railroad where the damages are recoverable for the wrongful acts of the defendant committed in violation of its contract.

The supreme court, in *Capital Gas Co.* v. *Young,* 109 Cal. 140, [29 L. R. A. 463, 41 Pac. 869], said: ''The duty to furnish gas to the city devolved upon the respondent, not by virtue of any contract, but by operation of law, and hence the laws governing ordinary contracts resting in the volition of the parties thereto have no application.'' If it be said that that was the case of a public service corporation and hence the reason underlying the rule there laid down does not apply here, it may be answered by the opinion in *Meadowcroft* v. *People,* 163 Ill. 56, [54 Am. St. Rep. 447, 35 L. R. A. 176, 45 N. E. 991]: ''The fundamental error in the contention thus formulated is the assumption that the business of banking stands upon exactly the same footing that the ordinary industrial pursuits of farming, merchandising, manufacturing and mining, and the many other common occupations of life, stand upon. The business of a banker is not *juris privati* only, but, like that of an innkeeper or common carrier, is affected with a public interest, and therefore subject to public regulation.'' (*Fogarties* v. *State Bank,* 12 Rich. (S. C.) 518, [78 Am. Dec. 468].) Said the Pennsylvania court: ''A bank is an institution of *quasi*-public character.'' (*Patterson*

v. *Marine National Bank,* 130 Pa. 419, [17 Am. St. Rep. 778, 18 Atl. 632] ; *Ex parte Pittman,* 31 Nev. 43, [20 Ann. Cas. 1319, 22 L. R. A., N. S., 266, 99 Pac. 700] ; *State* v. *Richcreek,* 167 Ind. 217, [119 Am. St. Rep. 491, 10 Ann. Cas. 899, 5 L. R. A., N. S., 874, 77 N. E. 1085].) It is upon the assumption that banking institutions are affected with a public interest that they are subject to regulation.

Without pursuing the argument further, our conclusion is that section 3302 of the Civil Code does not apply to a case of this character; that the complaint states a cause of action, and that the court erred in holding otherwise and in refusing to allow plaintiff to submit evidence in its support.

The judgment and order are reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment. in the district court of appeal, was denied by the supreme court on March 8, 1912.