Justice Dirk Sandefur delivered the Opinion of the Court.
***32 ¶1 Plaintiff Big Sky Civil & Environmental, Inc. (BSCE) appeals from judgments of the Montana Eighth Judicial District Court denying summary judgment to BSCE, and granting summary judgment to Wertzberger Architects, P.C. (WAPC) on BSCE's claim that Thomas Wertzberger is personally liable for certain professional services rendered by BSCE under a contract negotiated with WAPC, an agent of Allen Dunlavy, d/b/a Dunlavy Corp. We affirm.
¶2 The restated issues presented are:
1. Whether the District Court erroneously granted summary ***33 judgment that WAPC was not personally liable to BSCE pursuant to § 28-10-702(1), MCA ?[1]
2. Whether the District Court erroneously disregarded an unqualified common-law agency rule that an agent who contracts on behalf of a non-existent principal is personally liable on the contract?
3. Whether the District Court erroneously interjected and applied judicial estoppel as an alternative basis for its grant of summary judgment to WAPC?
BACKGROUND
¶3 BSCE is a civil engineering firm based in Great Falls, Montana, engaged in the business of providing professional civil engineering services, primarily through its principal shareholder, Joseph Murphy, P.E. WAPC is an Iowa-based professional corporation engaged in providing professional architectural *260 and design services, primarily through its principal shareholder, Thomas Wertzberger, AIA. In January 2013, Allen Dunlavy, d/b/a Dunlavy Corp., retained WAPC to perform professional architectural and design services on a building construction project in Shelby, Montana (Shelby Project). Unknown to WAPC, and for reasons not of record on appeal, Dunlavy Corp. did not actually exist as a separate corporate entity.
¶4 Incident to providing architectural and design services to Dunlavy, WAPC commissioned BSCE to provide onsite engineering services for the Shelby Project. By email dated Monday, January 14, 2014, WAPC authorized BSCE to proceed with a previously discussed scope of work,[2] to wit:
Please accept this email as your authorization to begin work on the Shelby [project] site.
You can proceed on an hourly basis per the schedule you sent me.
For now , you can invoice your time to [WAPC] as listed below. This may change as things proceed on the project.
***34 (Emphasis added.) WAPC addressed and sent the email jointly to BSCE, Allen Dunlavy, and Dunlavy's construction contractor (Warren Barse). BSCE immediately replied "Thanks. We'll plan to meet Warren [Barse] onsite on Wednesday...." BSCE emailed its response directly to Wertzberger, Barse, and Allen Dunlavy, with copies to various others. In a subsequent affidavit, WAPC, through Wertzberger, attested that WAPC clearly communicated to BSCE that WAPC was at all times acting on behalf and to the benefit of Dunlavy Corp . Wertzberger further attested that "BSCE met with [Dunlavy Corp. ] personnel in Shelby in the early stages of the engagement to come up with the work plan."[3] By email dated Friday, January 18th, BSCE notified Wertzberger, Barse, and Allen Dunlavy of BSCE's preliminary communications with a contemplated geotechnical engineering subcontractor. The email advised that BSCE would forward the subcontractor's proposal later that day and requested that the recipients notify BSCE if they desired a sooner start date.
¶5 Several weeks later, on February 7, 2013, at 5:06 p.m., BSCE emailed an invoice to WAPC in the amount of $19,610.86 for payment on BSCE's completed Shelby Project work. At 11:33 a.m. the next morning, WAPC replied by email, stating:
The owner would like you to bill him directly for your services. If you could modify the invoice so it is to him and send it there that would be great.
(Emphasis added.) The WAPC email further instructed BSCE to send the invoice to the referenced owner, "[Dunlavy Corp. ] ... Atten. Allen Dunlavy." Without objection or question, BSCE re-addressed the invoice as directed and sent it to the address specified in the WAPC email. In a subsequent affidavit, Murphy attested that BSCE re-invoiced Dunlavy Corp. based on BSCE's belief that WAPC and Wertzberger "were agents of [Dunlavy Corp. ]" By correspondence on April 26, 2013, Allen Dunlavy instructed BSCE that "if [BSCE] [is] not paid by May 1st ..." to "direct all collections towards [Dunlavy]" and that "the other parties have no part in this invoice."[4]
¶6 On May 20, 2013, after receiving no payment on the Dunlavy ***35 invoice, BSCE filed a complaint in the Montana Eighth Judicial District Court against Dunlavy Corp. , Wertzberger, WAPC, and Barse for payment on the invoiced work. Four days later, BSCE amended its complaint to included named defendants Allen Dunlavy d/b/a Dunlavy Corp. , WAPC, and Wertzberger. Following *261 Dunlavy's failure to appear and answer,[5] BSCE ultimately obtained a default judgment against "Allen Dunlavy d/b/a [Dunlavy Corp. ]" for the principal amount of the contract debt ($19,610.86), plus costs and interest. On August 12, 2014, BSCE moved for summary judgment against WAPC for the same principal amount on asserted claims of account stated and breach of contract. In opposition to the motion, WAPC asserted that WAPC never assented to the BSCE invoice as a debt owed by WAPC and that WAPC was not liable in contract because BSCE was aware that WAPC was acting as an agent for Dunlavy d/b/a Dunlavy Corp . Finding that genuine issues of material fact remained as to whether WAPC assented to the BSCE invoice as an account stated and whether WAPC disclosed to BSCE that it was acting as an agent of an identified principal rather than in its own individual capacity, the District Court denied BSCE's motion.
¶7 On November 4, 2015, WAPC and Wertzberger filed their own motion for summary judgment on BSCE's claims on the asserted grounds that: (1) neither of them assented to the BSCE invoice as a debt owed to BSCE by either; (2) WAPC was not liable to BSCE because it entered into the BSCE contract merely as an agent for a disclosed principal (Dunlavy d/b/a Dunlavy Corp. ); and (3) Wertzberger was not liable for any debt attributed to WAPC because he in turn was merely acting as a known agent for an identified principal (WAPC) and that grounds did not exist to pierce WAPC's corporate veil. BSCE opposed the motion on the asserted grounds that genuine issues of material fact remained as to whether WAPC assented to the BSCE invoice as an account stated and whether WAPC/Wertzberger contracted with BSCE in their individual capacities rather than in their asserted agency capacities. BSCE alternatively asserted that, even if acting as an agent of Dunlavy Corp. , WAPC remained liable to BSCE under agency principles either due to non-disclosure of the agency or principal or because the purported principal in fact did not exist. Finding no genuine issue of material fact on the supplemented Rule 56 record, the District Court granted summary judgment to ***36 WAPC and Wertzberger on BSCE's claims. The court essentially concluded that WAPC and Wertzberger were entitled to summary judgment that: (1) WAPC's overnight delay in responding to BSCE's afterhours email invoice did not constitute assent to be personally bound by the stated debt; (2) BSCE had reason to know that WAPC engaged BSCE as an agent of Dunlavy d/b/a Dunlavy Corp. ; (3) the common-law principle that an agent is liable for obligations entered into on behalf of a non-existent principal does not apply if the agent was not acting for the agent's own benefit; (4) Wertzberger made an unrebutted threshold showing that he engaged BSCE on behalf of his immediate principal (WAPC); and (5) BSCE neither pled nor made a supported factual showing for a claim for piercing WAPC's corporate veil.
STANDARD OF REVIEW
¶8 We review summary judgment rulings de novo under the standards of M. R. Civ. P. 56. Dick Anderson Constr., Inc. v. Monroe Prop. Co. , 2011 MT 138, ¶ 16, 361 Mont. 30, 255 P.3d 1257. Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). Whether a genuine issue of material fact exists or whether a party is entitled to judgment as a matter of law are conclusions of law subject to de novo review for correctness. Ereth v. Cascade Cty. , 2003 MT 328, ¶ 11, 318 Mont. 355, 81 P.3d 463.
DISCUSSION
¶9 1. Whether the District Court erroneously granted summary judgment that WAPC was not personally liable to BSCE under § 28-10-702(1), MCA ?
¶10 In support of its motion for summary judgment, BSCE asserts that it was entitled to judgment pursuant to § 28-10-702(1), MCA, because there was no genuine issue of material fact that the parties mutually assented that WAPC would be personally liable to BSCE for the agreed scope of work performed by BSCE on the Shelby Project.
*262 BSCE asserts that it is beyond genuine material dispute that, regardless of WAPC's agency capacity, WAPC consented to personally receive credit from BSCE in the transaction within the meaning of § 28-10-702(1), MCA.
¶11 Section 28-10-702(1), MCA, provides that:
A person who assumes to act as an agent is responsible to third persons as a principal for acts in the course of the agency ... when, with the agent's consent, credit is given to the agent personally in ***37 a transaction.
Adopted by Montana from the California Civil Code, § 28 - 10 - 702(1) is a Field Code[6] formulation of a common-law agency principle which, in the absence of clear legislative intent to deviate from the common law, we must construe in accordance with the common-law principles from which it derives. See §§ 1-1-108 to -109, 1-2-103, MCA ; Estate of Duke , 61 Cal.4th 871, 190 Cal.Rptr.3d 295, 352 P.3d 863, 868-69 (2015) ; Siminoff v. Jas. H. Goodman & Co. Bank , 18 Cal.App. 5, 121 P. 939, 941 (1912).[7]
¶12 Consistent with the language of § 28-10-702(1), MCA, the common law generally recognizes four scenarios generally determining when an agent of another is personally liable when contracting with a third party. First, an actual or apparent agent may contract with a third party on the agent's behalf without liability to the principal if the contract expressly excludes the principal as a party. See Restatement (Third) of Agency §§ 6.01 and 6.02 (2006). Accord § 28-10-702(1), MCA.
¶13 Second, except as otherwise agreed by the agent and third party, an agent with actual authority who enters into a contract with a third party on behalf of a disclosed principal is not personally liable on the contract. Empire Office Machs., Inc. v. Aspen Trails Assocs. LLC , 2014 MT 94, ¶ 14, 374 Mont. 421, 322 P.3d 424 ; Como v. Rhines , 198 Mont. 279, 287, 645 P.2d 948, 952 (1982) (citing Budget Ins. & Fin. v. Leighty , 186 Mont. 368, 372, 607 P.2d 1125, 1127 (1980) ); Heringer v. Schumacher , 88 Cal.App. 349, 263 P. 550, 552 (1928) ; Restatement (Third) of Agency § 6.01(2). See also § 28-10-702(1), MCA. When an agent's principal is disclosed, the law presumes that the agent intended to bind the principal without personal liability "except upon clear and explicit evidence" of the agent's intent to be personally liable with or exclusive of the principal. Heringer , 263 P. at 552. A principal is disclosed if the third party knows or had reason to know that an agent is acting for a principal and also knows or had reason to know of the identity of the principal. Empire Office Machs. , ¶¶ 17-18 ; Restatement (Third) of Agency §§ 1.04(2)(a), 1.04(4), and 6.01 cmt c. Accord Marks v. Jos. H. Rucker & Co. , 53 Cal.App. 568, 200 P. 655, 656 (1921) (actual knowledge of the ***38 principal's identity sufficient to relieve agent of liability however knowledge acquired). "Unless the contract explicitly excludes the principal as a party, parol evidence is admissible" to prove a third party's awareness of the identity of an agent's principal. Restatement (Third) of Agency § 6.01 cmt. c.
¶14 Third, except as otherwise agreed by the agent and third party, an agent with actual or apparent authority who enters into a contract with a third party on behalf of an unidentified principal is personally liable to the third party with the principal. Restatement (Third) of Agency § 6.02(2). See also § 28-10-702(1), MCA. A principal is unidentified if the third party knows or has reason to know that the agent is acting for a principal but does not know or have reason to know of the principal's identity. Restatement (Third) of Agency §§ 1.04(2)(c) and 1.04(4). Accord Empire Office Machs. , ¶¶ 14-18.
¶15 Fourth, an agent with actual authority who enters into a contract with a third party *263 on behalf of an undisclosed principal is also personally liable to the third party with the principal. Restatement (Third) of Agency § 6.03(2). See also § 28-10-702(1), MCA. A principal is undisclosed if the third party does not know or have reason to know that the agent is acting for a principal. Restatement (Third) of Agency §§ 1.04(2)(b) and 1.04(4). Accord Empire Office Machs. , ¶¶ 14-18.
¶16 Here, BSCE asserts that it was entitled to summary judgment based on WAPC's email directive for BSCE to proceed and invoice WAPC, and Murphy's subsequent affidavit assertion that WAPC "consented and agreed" that "credit would be given to [WAPC] personally in said transaction." However, the pertinent record email communication between WAPC and BSCE included Allen Dunlavy as a co-addressee. WAPC's directive to invoice WAPC was qualified (i.e. "for now ... you can invoice" WAPC but "[t]his may change as things proceed ..."). WAPC made an affidavit showing that Wertzberger at all times clearly communicated to BSCE that WAPC was acting on behalf of Dunlavy Corp . WAPC further made an affidavit showing the BSCE did not object to WAPC's February 7th directive to invoice Dunlavy Corp . directly. Though it did not dispute the amount of the initial BSCE invoice, WAPC directed BSCE to resubmit it directly to "the owner" the next day, which BSCE did without objection. We hold that the District Court correctly determined BSCE failed to show the absence of genuine issues of material fact entitling it to judgment as a matter of law on its contract and account stated claims.
¶17 On WAPC's subsequently filed motion, the District Court conversely granted summary judgment that WAPC was not personally liable on the contract pursuant to § 28-10-702(1), MCA. BSCE asserts ***39 that genuine issues of material fact precluded summary judgment to WAPC based on the Murphy affidavit assertions that WAPC "agreed ... that the credit would be given to [WAPC] personally in said transaction" and that "BSCE performed the services on credit given to [WAPC] ... as previously agreed to and instructed by" WAPC. However, "[a] contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." Section 28-3-402, MCA. Accord Restatement (Second) of Contracts § 202(1) (1981). In the absence of an integrated written agreement, the "parties to an agreement know best what they meant" and "their [contemporaneous] action under" the agreement "is often the strongest evidence of" their agreement. Restatement (Second) of Contracts § 202 cmt. g.
¶18 A product of a patchwork of prior communications and subsequent performance on the record presented, the WAPC-BSCE contract was an informal, unintegrated agreement based on a previously discussed scope of work, previously exchanged rate schedule, WAPC's January 14th email notice to proceed, BSCE's performance, and the parties' pertinent communications along the way. It is beyond genuine material dispute that WAPC was acting at all times as the project architect. BSCE made no assertion, much less a supported responsive showing, that WAPC had any other interest in the project or of any cost distribution agreement between WAPC and BSCE. WAPC co-addressed its January 14th notice to proceed jointly to BSCE, Allen Dunlavy, and construction contractor Barse. WAPC's included directive for BSCE to email WAPC was expressly subject to subsequent change.
¶19 BSCE's own contemporaneous conduct eliminates any ambiguity in WAPC's initial email statement. In response to WAPC's January 14th notice to proceed and initial invoicing instruction, BSCE responded by email directly to WAPC, contractor Barse, and Allen Dunlavy. Four days later, BSCE similarly emailed WAPC, Barse, and Allen Dunlavy (addressing them collectively as "Gentlemen"). The email advised them that the Shelby Project geotechnical work would commence on a specified start date "assuming" that they found the subcontractor's "proposal acceptable," and requested that they notify BSCE if they desired a sooner start date.
¶20 Following its receipt of BSCE's initial email invoice after 5:00 p.m. on February 7th, and consistent with its prior notice to *264 BSCE that the invoice recipient was subject to change, WAPC advised BSCE the next morning that:
[t]he owner would like you to bill him directly for your services. If you could modify the invoice so it is to him and send it there that ***40 would be great. The owner is [Dunlavy Corp. ] [address omitted] Attn: Allen Dunlavy.... Let me know if you have any questions.
(Emphasis added.) BSCE promptly redirected the invoice to Dunlavy Corp . as directed without question, objection, or statement evincing any prior understanding or manifestation of mutual intent that WAPC would be personally bound. Consistent with WAPC's affidavit assertion that BSCE was aware at all times that WAPC was merely acting as the project architect to the benefit of Dunlavy Corp ., BSCE later admitted that it resubmitted its invoice to Dunlavy Corp. as directed by WAPC based on its belief that WAPC and Wertzberger "were agents of [Dunlavy Corp .]"[8] In yet another indicia of the parties' contemporaneous understanding, Allen Dunlavy corresponded with BSCE on April 26, 2013, and instructed BSCE that "if [BSCE] [is] not paid by May 1st ..." to "direct all collections towards [Dunlavy]" and that "the other parties have no part in this invoice."[9] WAPC also presented unrebutted affidavit testimony that BSCE made no contemporaneous statement asserting or indicating a belief that it had contracted with WAPC in a personal capacity. The first assertion or indication of any such belief came in BSCE's District Court complaint.
¶21 Further supporting WAPC's position are two after-the-fact email statements on August 13, 2013, made by Allen Dunlavy to BSCE's counsel, WAPC, and Dunlavy's general contractor wherein Dunlavy consistently admits that he "personally gave" WAPC "the go ahead to request the [sitework] survey" and that he, not WAPC, was "responsible for [the] debt." Though double hearsay is otherwise generally inadmissible pursuant to M. R. Evid. 801(c), 802, and 805, Dunlavy's statements were nonetheless admissible as definitional non-hearsay pursuant to M. R. Evid. 801(d)(2)(A) and (B) (admissions by a party-opponent). In the first instance, Dunlavy's statements were admissible against Dunlavy pursuant to M. R. Evid. R. 801(d)(2)(A) as admissions offered against him in the affidavit of BSCE counsel Mark Dunn in support of BSCE's motion for entry of default judgment. In the second instance, Dunlavy's statements were admissible against BSCE pursuant to M. R. Evid. R. 801(d)(2)(B) as statements in which BSCE previously manifested an adoption or belief in their truth for the purpose of obtaining default judgment against Dunlavy. If unrebutted, the totality of these facts and circumstances clearly manifest that ***41 WAPC was at all times acting as an agent of a principal whose identity BSCE had reason to know, Allen Dunlavy d/b/a Dunlavy Corp. These facts similarly contradict BSCE's assertion that WAPC expressly or implicitly agreed to be personally liable on the contract independent of Dunlavy.
¶22 On satisfaction of the moving party's threshold burden of establishing the absence of genuine issues of material fact, the evidentiary burden shifts to the opposing party to respond with an affirmative showing of specific, substantial, and material evidence creating a genuine issue of material fact. State Farm Mut. Auto. Ins. Co. v. Gibson , 2007 MT 153, ¶ 9, 337 Mont. 509, 163 P.3d 387 ; Stanley v. Holms , 1999 MT 41, ¶ 31, 293 Mont. 343, 975 P.2d 1242. "Conclusory statements, speculative assertions, and mere denials are insufficient to defeat" summary judgment. Moe v. Butte-Silver Bow Cty. , 2016 MT 103, ¶ 14, 383 Mont. 297, 371 P.3d 415 ; State Farm , ¶ 9 ; Stanley ¶ 32 ; Sprunk v. First Bank Sys. , 252 Mont. 463, 466-67, 830 P.2d 103, 105 (1992). Mere disagreement over the correct interpretation or conclusion to be drawn from facts not otherwise subject to genuine material dispute is similarly insufficient to create a genuine issue of material fact. Stanley ¶ 32 ; Sprunk , 252 Mont. at 466, 830 P.2d at 105. Here, BSCE has made no non-conclusory showing of contemporaneous fact indicating any affirmative expression or manifestation by WAPC to be personally *265 bound to pay BSCE for the Shelby Project work. As a threshold matter, BSCE's conveniently parsed reliance on WAPC's initial email directive to invoice WAPC and its subsequent affidavit assertions that WAPC agreed that BSCE would extend credit to WAPC personally are inconsistent with: (1) the complete email statement in context; (2) BSCE's contemporaneous pre-dispute conduct; (3) BSCE's subsequent affidavit admission that BSCE believed that WAPC was Dunlavy's agent; and (4) BSCE's subsequent adoption and assertion of Dunlavy's admission that he, not WAPC, was responsible for the debt. BSCE has made no affirmative factual showing of any particular statement, circumstance, or conduct supporting its general conclusory assertion that WAPC affirmatively assented to be personally bound either in lieu of, or jointly with, Dunlavy on a contract debt negotiated by an admitted agent of a principal whose identity BSCE had reason to know. Under these circumstances, BSCE's conclusory affidavit assertions, tantamount to mere denials, were insufficient to defeat summary judgment on the Rule 56 showing made by WAPC. Regardless of the non-existence of Dunlavy Corp. as a separate legal entity, it is beyond genuine material dispute on the Rule 56 record presented that WAPC was a disclosed agent for a disclosed principal, ***42 Allen Dunlavy d/b/a/ Dunlavy Corp.[10] It is similarly beyond genuine material dispute that WAPC did not expressly or implicitly assent to be personally liable for the preliminary Shelby Project work performed by BSCE to the benefit of the project owner. We hold that the District Court correctly granted summary judgment that WAPC was not personally liable to BSCE pursuant to § 28-10-702(1), MCA.
¶23 2. Whether the District Court erroneously disregarded an unqualified common-law agency rule that an agent who contracts on behalf of a non-existent principal is personally liable on the contract?
¶24 Citing 3 Am. Jur. 2d Agency § 277, BSCE asserts that the District Court erroneously disregarded the unqualified common-law rule that an agent who contracts on behalf of a non-existent principal is personally liable on the contract regardless of the agent's good-faith belief in the principal's existence. 3 Am. Jur. 2d Agency § 277 certainly recognizes the common-law rule cited by BSCE but the rule is hardly unqualified.
¶25 As narrowly applicable to the promoter/non-existent corporate entity scenario, a purported agent who contracts with a third party "on behalf of an entity that does not exist" is "personally liable on the contract." Restatement (Third) of Agency § 6.04 cmt. c. Consistent with this promoter/non-existent entity rule, 3 Am. Jur. 2d Agency § 277 similarly recognizes that a person who contracts on behalf of a purported but non-existent principal "becomes a party to the contract if the purported agent knows or has reason to know that the purported principal does not exist." 3 Am. Jur. 2d Agency § 277 (citing Restatement (Third) of Agency § 6.04 ). However, it is beyond genuine material dispute on the Rule 56 record presented here that WAPC was not a promoter of Dunlavy Corp . and had no reason to believe that it did not exist. Thus, the promoter/non-existent entity principles recognized in 3 Am. Jur. 2d Agency § 277 and Restatement (Third) of Agency § 6.04 have no application here.
¶26 3 Am. Jur. 2d Agency § 277 further recognizes that the general rule cited by BSCE does not apply where the parties agreed, "by express agreement or from the circumstances" not to hold the agent personally liable. The Restatement similarly recognizes that "[a] person who acts as agent on behalf of a disclosed principal does not become a party to a contract made with a third party unless the agent and the third party so agree." Restatement (Third) of Agency § 6.04 ***43 cmt. b. Here, while Dunlavy Corp . did not exist, it is beyond genuine material dispute that Allen Dunlavy did exist and that BSCE had reason to know of his existence at the time of contracting. Not only was WAPC an authorized and apparent agent for a disclosed principal (Dunlavy) for the purposes of Restatement (Third) of Agency §§ 1.04 and *266 6.01 -03, BSCE made no non-conclusory showing rebutting WAPC's assertion that WAPC did not expressly or implicitly agree to be personally bound on the Shelby Project contract. Thus, BSCE has not demonstrated that the District Court disregarded an unqualified common-law rule of agency.
¶27 BSCE similarly relies on Metro Kitchenworks Sales, LLC v. Cont'l Cabinets, LLC , 31 A.D.3d 722, 723, 820 N.Y.S.2d 79 (2006), for the similar proposition that, "on the theory of a breach of an implied warranty of authority[,]" an agent who contracts on behalf of a non-existent principal is personally liable except as otherwise agreed. At common law, an agent who purports to contract on behalf of another implicitly warrants to the third party that the principal authorized the agent to act on the principal's behalf. Restatement (Third) of Agency § 6.10. An agent is thus subject to liability to a third party for damages or loss caused by a breach of the warranty, including loss of the expectancy that the principal would perform as agreed by the agent. Restatement (Third) of Agency § 6.10. However, the implied warranty does not render an agent the guarantor of the principal's performance; it merely warrants that the principal authorized the agent to contract on the principal's behalf. See Restatement (Third) of Agency § 6.10.
¶28 Here, it is beyond genuine material dispute that WAPC contracted with BSCE as an agent of Allen Dunlavy d/b/a/ Dunlavy Corp . and that Dunlavy was the only apparent principal or corporate officer involved or apparent in the subject transaction. There is no record evidence that WAPC represented or otherwise warranted that it was acting as an agent of Dunlavy Corp. separate and apart from Allen Dunlavy.[11] The record at most reflects that WAPC expressly or implicitly represented that it was an agent of Dunlavy d/b/a Dunlavy Corp. Regardless of the non-existence of Dunlavy Corp., WAPC was authorized by Dunlavy to act as Dunlavy's project architect and to contract in that capacity for the subject third-party engineering services. BSCE has failed to show ***44 that WAPC breached the implied warranty of authority as to Dunlavy personally. As to Dunlavy Corp ., in addition to failing to plead a breach of warranty claim, BSCE has made no showing that the non-existence of Dunlavy Corp . caused any damage to BSCE separate and apart from Dunlavy's breach of the contract. Thus, the implied warranty of authority principle recognized in Metro Kitchenworks and Restatement (Third) of Agency § 6.10 is not applicable here.[12] We hold that the District Court did not erroneously disregard an unqualified common-law agency rule that an agent who contracts on behalf of a non-existent principal is personally liable on the contract.
¶29 3. Whether the District Court erroneously interjected and applied judicial estoppel as an alternative basis for its grant of summary judgment to WAPC?
¶30 Judicial estoppel is an equitable principle that bars a party from taking inconsistent positions of fact and law at different points in the same litigation if: (1) the party had knowledge of the pertinent facts at the time of the initial assertion; (2) the party accomplished or prevailed on the litigation *267 purpose for which the party initially made the assertion; (3) the subsequent assertion of fact and law is contrary or inconsistent with the party's prior position; and (4) the original assertion induced or misled the adverse party such that allowing that party to change positions would prejudice the adverse party. Watkins Tr. v. Lacosta , 2004 MT 144, ¶ 33, 321 Mont. 432, 92 P.3d 620. See also New Hampshire v. Maine , 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001) (judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase"). Here, based on two email admissions made by Allen Dunlavy on August 13, 2013 (i.e., that he "personally gave" WAPC "the go ahead to request the [sitework] ***45 survey" and that he, not WAPC, was "responsible for [the] debt"), BSCE previously asserted, in support of its motion for default judgment against Dunlavy, that Dunlavy was solely liable to BSCE on the Shelby Project contract. Thus, as an alternative basis for granting summary judgment that WAPC was not personally liable on the BSCE contract, the District Court concluded sua sponte that judicial estoppel barred BSCE from subsequently asserting that WAPC was personally liable on the contract, whether solely or jointly with Dunlavy.
¶31 Citing M. R. Civ. P. 8(c)(1) and Love v. Tyson Foods, Inc. , 677 F.3d 258 (5th Cir. 2012), BSCE asserts that judicial estoppel is an affirmative defense, waived if not affirmatively pled in a response pleading. Based on the fact that WAPC did not plead judicial estoppel as an affirmative defense or otherwise assert it in opposition to BSCE in this litigation, BSCE asserts that the District Court erroneously interjected a waived affirmative defense to the benefit of WAPC and prejudice of BSCE. BSCE further asserts that, even if not waived, judicial estoppel would not apply on its elements in any event upon consideration of BSCE's prior litigation position viewed in context.
¶32 We need not address BSCE's assertions of error under this issue because the District Court interjected judicial estoppel only as an alternative basis for granting summary judgment that WAPC was not personally liable to BSCE and we are not affirming any of the court's summary judgment rulings on that basis. Therefore, without comment on the merits of the issue, we decline to address whether the District Court erroneously interjected and applied judicial estoppel under the facts and circumstances of this case.
CONCLUSION
¶33 In summary, we hold that that the District Court correctly denied BSCE's motion for summary judgment that WAPC was personally liable to BSCE pursuant to § 28-10-702(1), MCA. We further hold that the District Court correctly granted summary judgment on WAPC's subsequent motion that WAPC was not personally liable to BSCE pursuant to § 28-10-702(1), MCA. Finally, we hold that the District Court did not erroneously disregard an unqualified common-law agency rule that an agent who contracts on behalf of a non-existent principal is personally liable on the contract.
¶34 Affirmed.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
BETH BAKER, J.
JIM RICE, J.

Our analysis of this issue encompasses the related issue of whether the District Court erroneously denied BSCE's motion for summary judgment that WAPC was personally liable to BSCE under § 28-10-702(1), MCA.

Based on prior communication not of record, BSCE had transmitted its standard rates and fees schedule to WAPC earlier in the day. In a subsequent affidavit, Murphy attested that Wertzberger first contacted BSCE "in early January 2013, requesting that BSCE provide services, including surveying and developing an autocad drawing" for the Shelby Project site.

The specific identity of the "[Dunlavy Corp. ] personnel" referenced in the Wertzberger affidavit is unclear from the record, whether Allen Dunlavy, contractor Barse, or other. The only record indication is BSCE's January 14th email response to WAPC's earlier notice to proceed, stating BSCE's acknowledgment and plan to meet Warren Barse onsite on Wednesday, January 16th.

See Pl.'s Am. Compl. ¶ 7, May 24, 2013.

BSCE effected service of process on Allen Dunlavy in South Dakota on July 27, 2013.

See David Dudley Field's proposed but never-enacted New York Civil Code (1865).

See also Scott J. Burnham, Let's Repeal the Field Code! , 67 Mont. L. Rev. 31, 40-47 (2006) ; Andrew P. Morriss, " This State Will Soon Have Plenty of Laws"-Lessons Learned from One Hundred Years of Codification in Montana , 56 Mont. L. Rev. 359, 363-98 (1995) ; Robert G. Natelson, Running with the Land in Montana , 51 Mont. L. Rev. 17, 35-44, 86-90 (1990) ; Rodolfo Batiza, Sources of the Field Civil Code: The Civil Law Influences on a Common Law Code , 60 Tul. L. Rev. 799, 813-15 (1986).

See Aff. Joseph Murphy ¶ 14, December 23, 2015.

See Pl.'s Am. Compl. ¶ 7, May 24, 2013.

The recipients of WAPC's January 14, 2013 email notice to proceed included Joseph Murphy, Warren Barse (Dunlavy's general contractor), and Allen Dunlavy.

The Rule 56 record merely reflects that: (1) Dunlavy apparently held himself out as the principal of Dunlavy Corp. ; (2) WAPC and BSCE assumed that Dunlavy Corp. existed; and (3) Dunlavy was the only corporate representative of Dunlavy Corp . known to WAPC and BSCE.

Metro Kitchenworks is further distinguishable on its facts and to the narrow corporate promoter/non-existent corporation scenario. In that case, a corporate promoter and a third party knowingly entered into a ten-year contract purporting to bind an anticipated but then non-existing corporation. Metro Kitchenworks , 31 A.D.3d at 722, 820 N.Y.S.2d 79. In the face of an apparent breach of the contract by the third party six years into the contract, the promoter finally chartered the corporation and then sued the third party on the contract. Metro Kitchenworks , 31 A.D.3d at 723, 820 N.Y.S.2d 79. In response to the third party's assertion that the contract was unenforceable because the corporation did not exist at the time of contract formation, the New York Supreme Court Appellate Division held that the contract was enforceable by the subsequently chartered corporation because the initial contract was binding between the promoter/agent and the third party regardless of the non-existence of the corporation and upon the corporation's post-charter assumption or ratification of the contract. Metro Kitchenworks , 31 A.D.3d at 723, 820 N.Y.S.2d 79.