FILED

01/26/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 20-0417

OP 20-0417

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 13

WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,
CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES, and
THOMPSON FALLS CONGREGATION OF JEHOVAH'S WITNESSES,

   Petitioners,

 v.

MONTANA TWENTIETH JUDICIAL DISTRICT COURT, SANDERS COUNTY, and
THE HONORABLE ELIZABETH A. BEST, PRESIDING JUDGE,

   Respondents.

ORIGINAL PROCEEDING: Petition for Writ of Supervisory Control
         In and For the County of Sanders, Cause No. DV-16-84
         Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

    For Petitioners:

       Bradley J. Luck, Tessa A. Keller, Garlington, Lohn & Robinson, PLLP,
       Missoula, Montana

       Joel M. Taylor, Associate General Counsel, Watchtower Bible and Tract
       Society of New York, Inc., Patterson, New York

    For Alexis Nunez:

       D. Neil Smith, Ross Leonoudakis, Nix, Patterson & Roach, LLP, Dallas,
       Texas

       James P. Molloy, Gallik, Bremer & Molloy, P.C., Bozeman, Montana

       Submitted on Briefs: December 22, 2020

             Decided: January 26, 2021

Filed: _____

_____
Clerk

2

Justice Ingrid Gustafson delivered the Opinion and Order of the Court.

¶1 Watchtower Bible and Tract Society of New York, Inc., Christian Congregation of Jehovah's Witnesses, and Thompson Falls Congregation of Jehovah's Witnesses (the "Jehovah's Witnesses") seek a writ of supervisory control over the Montana Twentieth Judicial District Court, Sanders County, and the Honorable Elizabeth A. Best, presiding judge. The Jehovah's Witnesses maintain the District Court's June 10, 2020 Order Amending Order Granting Leave to Proceed with Common Law Negligence Claim and File Second Amended Complaint is in legal error. They ask this Court to direct the District Court to enter final judgment for them and terminate the case, because the doctrine of claim preclusion[1] precludes Alexis Nunez from proceeding to trial with her common law negligence claim after remand from this Court in *Nunez v. Watchtower Bible & Tract Society of New York, Inc.*, 2020 MT 3, 398 Mont. 261, 455 P.3d 829. For the reasons explained in this Opinion and Order, we deny the writ because the District Court is not proceeding under a mistake of law.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Alexis Nunez[2] sued the Jehovah's Witnesses for negligence, negligence per se, and breach of fiduciary duty and sought punitive damages. Before trial, the District Court sua

---

[1] Although the parties refer to "res judicata" in their briefing, this Opinion and Order will use the term "claim preclusion." *See McDaniel v. State*, 2009 MT 159, ¶ 27 n.2, 350 Mont. 422, 208 P.3d 817 ("To promote clarity, the trend has been to use the terms 'claim preclusion' and 'issue preclusion' in lieu of 'res judicata' and 'collateral estoppel,' respectively.").

[2] A second plaintiff, Holly McGowan, also brought claims against the Petitioners in the original complaint, but on the record before us, it does not appear she has attempted to revive any of her causes of action post-remand. Despite language in the District Court's order purporting to include McGowan, we only consider Nunez's revived and amended claims in this writ of supervisory control.

3

sponte granted partial summary judgment to Nunez, determining as a matter of law the Jehovah's Witnesses were both negligent per se and the cause of Nunez's damages for failing to report known abuse of other children by Nunez's perpetrator to the appropriate legal authorities. During a pretrial discussion about settling preliminary jury instructions, counsel for Nunez indicated Nunez was "fine limiting [her] negligence claim to the negligence per se claim." The District Court asked to clarify whether Nunez was dismissing her common law negligence claim and breach of fiduciary duty claim, to which counsel responded "Yes, your Honor." The Jehovah's Witnesses did not object. At trial, the jury determined Nunez's damages and awarded punitive damages to Nunez against the Jehovah's Witnesses. On appeal, this Court determined the District Court erred in determining the Jehovah's Witnesses were negligent per se and "reverse[d] and remand[ed] for entry of summary judgment in favor of Jehovah's Witnesses." *Nunez*, ¶ 34.

¶3 After remand to the District Court, Nunez moved to amend her complaint to revive her common law negligence claims. The District Court granted her motion. Upon Nunez's motion, the District Court amended its order to correct a misstatement of fact in its original order. In response to the District Court's amended order, the Jehovah's Witnesses filed a petition seeking a writ of supervisory control with this Court.

## DISCUSSION

¶4 This Court may assume supervisory control, as authorized by Article VII, Section 2(2), of the Montana Constitution and M. R. App. P. 14(3) to control the course of litigation when the case involves purely legal questions and the district court "is proceeding under a mistake of law and is causing a gross injustice." M. R. App. P. 14(3)(a). Our

4

determination of whether supervisory control is appropriate is a case-by-base decision, based on the presence of extraordinary circumstances and a particular need to prevent an injustice from occurring. *Stokes v. Mont. Thirteenth Judicial Dist. Court*, 2011 MT 182, ¶ 5, 361 Mont. 279, 259 P.3d 754.

¶5 The Jehovah's Witnesses first argue the District Court erred as a matter of law in allowing Nunez to amend her complaint to revive the common law negligence claim because claim preclusion precludes such a claim. Watchtower argues the situation presented in this case is no different than if Nunez had filed a separate post-appeal lawsuit in which she asserted a common law negligence claim, and had Nunez done so, there would be no question claim preclusion applies and would bar the claim. Watchtower argues Nunez had the opportunity to place her common law negligence claim in front of a jury and she choose not to do so, thereby precluding her from pursuing that claim now.

¶6 Nunez argues she is neither bringing forth a new claim nor filing a new lawsuit. She characterizes her attempt as seeking "to proceed on the claims that remain following this Court's remand order." Nunez points out that this Court in *Slater v. Central Plumbing & Heating Co.*, 1999 MT 257, ¶ 24, 297 Mont. 7, 993 P.2d 654, explained "a reversal extends only to those issues which the appellate court decided in actuality or by necessary implication; it does not affect collateral matters not before the court," and she maintains her common law negligence claim remains a live issue that has not been decided in actuality or by necessary implication before the District Court or this Court.

¶7 The doctrine of claim preclusion "embod[ies] a judicial policy that favors a definite end to litigation, whereby we seek to prevent parties from incessantly waging piecemeal,

5

collateral attacks against judgments." *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 18, 366 Mont. 78, 285 P.3d 494 (quoting *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267). The doctrine promotes judicial economy and finality of judgments. *Brilz*, ¶ 18. "Under claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in *that action*." *Brilz*, ¶ 18 (emphasis added); *see also* Restatement (Second) of Judgments § 19 (Am. Law. Inst. 1982) ("A valid and final personal judgment rendered in favor of the defendant *bars another action* by the plaintiff on the same claim." (emphasis added)).

¶8 We agree with Nunez that *Slater* involved the question of whether a party could litigate certain previously raised claims after this Court reversed and remanded the matter. In that case, the general contractor, Edsall, filed an amended crossclaim against its subcontractor Central after the district court had determined Edsall was strictly liable to an injured worker of one of Central's subcontractors under statute and the jury awarded the injured worker almost $700,000 against Edsall. *Slater*, ¶¶ 5-8.

¶9 The amended crossclaim contained four causes of action, including breach of contract and negligence by Central. *Slater*, ¶ 8. Central moved for summary judgment on all claims and Edsall moved for partial summary judgment on the breach of contract claim. The District Court ultimately granted Edsall summary judgment on the breach of contract claim and denied Central's motion for summary judgment. The court awarded Edsall over $600,000 under the breach of contract claim and Central appealed. *Slater*, ¶ 11. This Court reversed the District Court's grant of summary judgment on the breach of contract issue. After remand, Central moved for judgment to be entered against Edsall; Edsall objected,

6

arguing that it was entitled to pursue the other issues raised by its crossclaim. The District Court entered judgment in favor of Central and dismissed the crossclaims. Edsall then appealed. *Slater*, ¶ 12.

¶10 On appeal, Edsall argued that the negligence claim it had asserted in its amended crossclaim was based on an indemnity provision in the contract it had entered into with Central that would indemnify Edsall against any loss arising out of Central's negligence. *Slater*, ¶ 18. Central argued that claim preclusion precluded Edsall from raising this issue at this point in the case. *Slater*, ¶ 25. This Court disagreed. This Court ultimately determined claim preclusion did not prevent litigation from resuming on previously asserted causes of action after the reversal of a partial summary judgment order on appeal, explaining "Edsall has yet to have a full opportunity to present the issue of indemnity based on Central's negligence for a judicial determination." *Slater*, ¶ 27. Causes of action that were not at issue on appeal were not determined and were not precluded from going forward on remand. Like in *Slater*, ¶ 31, "[t]his is a situation where [Nunez] pleaded all of [her] claims to a single court . . .; [she] is not pleading new claims." Despite its similarity in this regard, *Slater* is distinguishable in that there was never a withdrawal or dismissal of any claim—that factual circumstance though was not the basis for this Court's ruling.

¶11 The cases upon which Watchtower relies are cases in which the losing party attempted to bring a new cause of action after their initial litigation failed. *See Fisher v. State Farm Gen. Ins. Co.*, 1999 MT 308, 297 Mont. 201, 991 P.2d 452; *Orlando v. Prewett*, 236 Mont. 478, 771 P.2d 111 (1989); *Klimpton v. Jubilee Placer Mining Co.*, 22 Mont. 107, 55 P. 918 (1899). While Watchtower argues in its petition, "If Nunez had filed a

7

separate post-appeal lawsuit asserting her common law negligence claim, all claim preclusion elements would clearly be present," the fact is Nunez did not file a separate post-appeal lawsuit. Nunez is seeking to litigate additional claims against the Jehovah's Witnesses in the same suit. Claim preclusion simply does not apply to the continued proceedings before the District Court. As Nunez points out, the proper doctrine to apply is law of the case.

> The doctrines of law of the case and res judicata often work hand in glove but are not identical. Two important policies underlie and are common to both principles: judicial economy and finality of judgments. While the law of the case is normally decisive, it does not have the same binding force as the doctrine of res judicata. The United States Supreme Court has stated, concerning the difference between law of the case and res judicata, that "one directs discretion, the other supersedes it and compels judgment."

*State v. Gilder*, 2001 MT 121, ¶ 10, 305 Mont. 362, 28 P.3d 488 (quoting *S. Ry. Co. v. Clift*, 260 U.S. 316, 319, 43 S. Ct. 126, 127 (1922)) (internal citations omitted). As this Court has long explained:

> The judgments of appellate courts are as conclusive as those of any other court. They not only establish facts, but also settle the law, so that the law as decided upon any appeal must be applied to *all the subsequent stages of the cause*, and they are res judicata *in other cases* as to every matter adjudicated.

*Cent. Mont. Stockyards v. Fraser*, 133 Mont 168, 187, 320 P.2d 981, 991 (1957) (quoting 2 Abraham Clark Freemen, *A Treatise on the Law of Judgments*, § 639, 1345-46 (5th Ed. 1925)) (emphasis added). Under the law of the case, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Norbeck v. Flathead County*, 2019 MT 84, ¶ 26, 395 Mont. 294, 438 P.3d 811 (citing *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391 (1983)).

8

It refers to instances where rulings made at a stage in litigation that are not appealed from when the opportunity to do so exists, become "the law of the case for the future course of that litigation and the party that does not appeal is deemed to have waived the right to attack that decision at future points in the same litigation."

*Norbeck*, ¶ 26 (quoting *McCormick v. Brevig*, 2007 MT 195, ¶ 38, 338 Mont. 370, 169 P.3d 352).

¶12    Based on our review of the record provided to us, nothing in the law of the case prevented the District Court from granting Nunez's motion to amend her complaint. Our decision in the appeal in *Nunez I* dealt with the issue of whether the Jehovah's Witnesses had violated Montana's mandatory child abuse reporting statute, § 41-3-201, MCA, and were therefore negligent per se. We determined, as a matter of law, the Jehovah's Witnesses had not violated the statute. The issue of common law negligence was not resolved in either this Court or the District Court.

¶13    Further, nothing in the colloquy between the District Court and counsel before trial prevented the District Court from allowing Nunez to amend her claims later. Nunez's common law negligence claim was never dismissed with prejudice pursuant to M. R. Civ. P. 41 because: (a) the parties did not stipulate to such dismissal, (b) the Court did not order such dismissal, and (c) the entire action was not dismissed. Rule 41(a) was specifically constructed to prohibit voluntary dismissal of an action *after* an answer or a motion for summary judgment has been filed to allow the opposing party input (whether by stipulation or by argument to the court) to determine how the action is dismissed. Unless specifically stated, voluntary dismissal of an action is without prejudice. *See* M. R. Civ. P. 41(a). Further, Rule 41(a) does not allow for piecemeal dismissals of claims in a multiple claim

lawsuit. "Instead, withdrawals of individual claims against a given defendant are governed by Fed. R. Civ. P. 15, which addresses amendments to pleadings." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005) (citing *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389 (9th Cir. 1988)).[3] Thus, although the District Court and counsel discussed "dismissing" the common law negligence claim, the withdrawal of the claim should be interpreted as an amendment under M. R. Civ. P. 15, rather than as a dismissal under M. R. Civ. P. 41.

¶14 The Jehovah's Witnesses argue if claim preclusion does not preclude Nunez from moving forward with her common law negligence claim, then M. R. Civ. P. 15 does not permit Nunez to amend her complaint post-trial. Under Rule 15(b), the circumstances for allowing post-trial amendments to the complaint are limited and not applicable here.

¶15 M. R. Civ. P. 15 provides, in relevant part:

(a) Amendments before Trial.

.    .    .

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

.    .    .

(b) Amendments During and After Trial.

---

[3] We have held under a prior version of the rules that "Rules 41(a) and 41(d) of the Montana Rules of Civil Procedure are identical in all respects to Rules 41(a) and 41(d) of the Federal Rules of Civil Procedure. Because the language of the state and federal rules is identical, the interpretation of the federal rules [has] persuasive application to the interpretation of the state rules." *U.S. Fid. & Guar. Co. v. Rodgers*, 267 Mont. 178, 181-82, 882 P.2d 1037, 1039 (1994). The language of Fed. R. Civ. P. 41(a)(1)(B) is no longer identical, but the relevant portions of Fed. R. Civ. P. 41(a)(1)(A) and M. R. Civ. P. 41(a)(1)(A) still are identical, so the federal authority remains persuasive.

(1) Based on an Objection at Trial. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.
(2) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move — at any time, even after judgment — to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

¶16 We disagree that M. R. Civ. P. 15(b) governs Nunez's amendments. After this Court reversed the District Court's pretrial grant of summary judgment on negligence per se, the jury verdict against the Jehovah's Witnesses was effectively vacated. Negligence per se was the only cause of action between Nunez and the Jehovah's Witnesses put to the jury.

¶17 Here, the *Hells Canyon* case is very instructive. In *Hells Canyon*, the plaintiffs filed a complaint alleging the U.S. Forest Service violated both the National Environmental Policy Act (NEPA) and the Wilderness Act. During oral argument before the district court on the parties' cross-motions for summary judgment, the plaintiff voluntarily abandoned its Wilderness Act claim. The district court later rejected the plaintiff's NEPA claim on the merits and, in its order, dismissed the Wilderness Act claim as "moot." *Hells Canyon Pres. Council*, 403 F.3d at 685. The plaintiff subsequently brought another action that included a claim under the Wilderness Act. The district court dismissed the claim as barred by claim preclusion, and the Ninth Circuit reversed.

¶18 The Ninth Circuit first observed the prior summary judgment ruling addressed only the NEPA claim; then "turn[ed] to the somewhat thorny question whether the Wilderness

11

Act claim in [the prior case] was included in the 'final judgment on the merits' rendered by the district court." *Hells Canyon Pres. Council*, 403 F.3d at 686. The parties both argued the application of Rule 41, with the Forest Service arguing Fed. R. Civ. P. 41(b) compelled a conclusion the dismissal "operate[d] as an adjudication upon the merits" and the plaintiff arguing that Rule 41(a)(2)'s voluntary dismissal provisions governed, meaning the dismissal was without prejudice because it was not otherwise specified. *Hells Canyon Pres. Council*, 403 F.3d at 687. The Ninth Circuit did not find either argument convincing, holding there was no final judgment on the merits of the Wilderness Act claim in the first suit because the district court's treatment of it "is best construed as approval of an oral amendment of the complaint to excise that claim" under Rule 15. *Hells Canyon Pres. Council*, 483 F.3d at 687.

¶19 Quoting *Moore's Federal Practice*, the Ninth Circuit stated, "Federal Rule of Civil Procedure 15(a) is the appropriate mechanism 'where a plaintiff desires to eliminate an issue, or one or more but less than all of several claims, but without dismissing as to any of the defendants.'" *Hells Canyon Pres. Council*, 483 F.3d at 688 (quoting 5 James W. Moore et al., *Moore's Federal Practice* ¶ 41.06-1, 41-83 to -84 (2d Ed. 1987)). "[W]hat the district court should have done [with the plaintiff's Wilderness Act claim], and what we believe it did do, was treat [the plaintiff's] oral withdrawal of its Wilderness Act claim as a motion to amend its complaint under Rule 15(a)." *Hells Canyon Pres. Council*, 483 F.3d at 689. Calling the trial court's failure to so characterize its action as "a technical, not a substantive, distinction[,]" the Ninth Circuit held the claim "was already withdrawn before the district court entered judgment," no prejudice attaches to a claim properly

12

dropped from a complaint under Rule 15(a) prior to final judgment, and there was no final judgment on the merits of the plaintiff's Wilderness Act claim in the first suit. *Hells Canyon Pres. Council*, 483 F.3d at 690. Because the NEPA claim decided in the first suit was not identical to the Wilderness Act claim in the second suit, claim preclusion did not bar the claim. *Hells Canyon Pres. Council*, 483 F.3d at 690-91.

¶20 Rule 15(a) operates in similar fashion to the facts shown on the Nunez record. When Nunez's counsel indicated they would move forward only on the negligence per se claim, that should have been construed as an oral motion to amend the pleadings. There was no objection, and the court granted leave—thus satisfying the requirements of Rule 15(a). The claim then was no longer part of the case at the time verdict was rendered. As noted earlier, once this Court reversed the District Court, there was no judgment in effect—our opinion required entry of summary judgment only on the negligence per se claim. At that point, Nunez's motion to amend the complaint to add the common law claim was not precluded as a matter of law but became a matter of discretion under Rule 15.

¶21 Upon reversal and remand, the parties were no longer in a post-trial posture and Rule 15(a) governs Nunez's motion to amend her complaint. A district court has discretion to grant or deny a motion to amend a pleading and we review a district court's decision to amend for an abuse of discretion. *Ally Fin., Inc. v. Stevenson*, 2018 MT 278, ¶ 10, 393 Mont. 332, 430 P.3d 522. Rule 15(a) provides for liberal amendment of pleadings, "but does not require amendments in all instances." *Lindey's, Inc. v. Prof'l Consultants, Inc.*, 244 Mont. 238, 242, 797 P.2d 920, 923 (1990).

> [A] a trial court is justified in denying a motion for an apparent reason "such as undue delay, bad faith or dilatory motive on the part of the movant,

13

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of the amendment, etc."

*Lindey's, Inc.*, 244 Mont. at 242, 797 P.2d at 923 (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). In many cases, these grounds for dismissal would weigh heavily against granting a motion to amend post-remand from this Court. In *Stanford v. Rosebud County*, 254 Mont. 474, 477-78, 839 P.2d 93, 95-96 (1992), this Court explained that even under the liberality doctrine of Rule 15, parties are not entitled to amend their pleadings when the motion to amend is made after judgment has been entered against them, but rather such motion is left to the sound discretion of the district court. We explained:

> A busy district court need not allow itself to be imposed upon by the presentation of theories seriatum. Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but "equal attention should be given to the proposition that there must be an end finally to a particular litigation."

*Stanford*, 254 Mont. at 478, 839 P.2d at 95-96 (quoting *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469-70 (5th Cir. 1967)).

¶22 In *Stanford*, the appellants challenged the district court's denial of their motion to amend their pleadings post-remand to add an entirely new theory that had never been raised in over fourteen years of litigation. *Stanford*, 254 Mont. at 477, 839 P.2d at 95. This Court upheld the denial, explaining "the general rule that a court ordinarily will be reluctant to allow leave to amend" when a party seeks "to inject a new theory of recovery via a post-judgment motion to amend pleadings." *Stanford*, 254 Mont. at 478, 839 P.2d at 95. Such amendments are not categorically prohibited, but rather, left to the sound discretion of the district court. *See Stanford*, 254 Mont. at 478, 839 P.2d at 96.

¶23 Given the liberal deference given to the trial court under Rule 15, Jehovah's Witnesses have not shown the District Court abused its discretion in granting Nunez leave to amend her complaint. This is especially true in light of the very unique circumstances of this case that demonstrate good cause why the common law negligence theory, although raised, was not prosecuted in the prior proceedings: This Court reversed a grant of *partial* summary judgment on appeal. Nunez's amended complaint does not attempt to add a completely new cause of action, as occurred in *Stanford*, but revives a cause of action she pleaded in her original complaint. She had withdrawn that claim immediately before trial in reliance on the District Court's sua sponte pretrial grant of partial summary judgment on negligence per se and causation, which left only the issue of damages for a jury to consider. Given the grant of partial summary judgment, Nunez no longer had to prove to the jury at the first trial that the Jehovah's Witnesses had a duty, breached that duty, and such breach caused her damages. Notably, Jehovah's Witnesses have not made a prejudice argument—which would have to be predicated on having to now defend against the common law claim.[4]

¶24 It was within the District Court's discretion to allow Nunez to amend her complaint to revive the common law negligence claim post remittitur from this Court in the interest of justice.

---

[4] Likely because they did not object to the withdrawal of that claim or seek to have the claim dismissed with prejudice.

## CONCLUSION

¶25 IT IS THEREFORE ORDERED the Petitioner's Petition for a Writ of Supervisory Control is DENIED and DISMISSED.

¶26 The Clerk is directed to forward a copy of this Opinion and Order to all counsel of record in the Twentieth Judicial District Court, Sanders County, Cause No. DV-16-84, and to the Honorable Elizabeth A. Best, presiding judge.

Dated this 26th day of January, 2021.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ SHANE A. VANNATTA
District Court Judge Shane A. Vannatta
sitting in place of Justice Laurie McKinnon

Justice Dirk Sandefur, dissenting.

¶27 I concur that neither equitable claim preclusion (res judicata), nor the related law of the case doctrine, apply on their elements to bar revival of Nunez's common law negligence claim. I further concur that M. R. Civ. P. 41 (regarding voluntary dismissal of "actions") does not apply to the claim dismissal at issue here. The Court correctly recognizes that the dispositive question is whether the District Court abused its discretion under M. R. Civ. P. 15(a) in allowing Nunez to revive her previously abandoned common law negligence claim under the particular circumstances of this case. However, the Court's holding that the District Court did *not* abuse its discretion here is patently erroneous because it is based on

16

a gross mischaracterization of the pertinent record colloquy between the trial court and counsel before opening statements at trial. The Court's sanitized characterization of the record glosses over what really happened here, and what the Court is reluctant to recognize, *i.e.*, that Nunez, through extraordinarily experienced and competent counsel, aggressively made a knowing, voluntary, and intelligent decision to abandon her alternatively-pled common law negligence claim to go all-in on her chosen negligence per se claim, based on an unexpected summary judgment that conveniently relieved her of having to prove that the Jehovah's Witnesses acted unreasonably under the circumstances and, if so, that any such negligence was the actual cause of her sexual abuse, rather than the criminal conduct of her step-grandfather. In the wake of the unfortunate failure of that purely tactical gambit, Nunez and the District Court sheepishly assert, inaccurately, that it would have been senseless, impossible, and/or unduly confusing for her to have continued to prudently prosecute both claims, as she alone pled them, and to then have the jury appropriately instructed in the alternative, as would have occurred in the ordinary course but for her tactical decision. Thus, before even reaching the issue of resulting prejudice to the Jehovah's Witnesses, no good cause existed to allow Nunez to backup and try the case again on a previously discarded legal theory after her chosen theory failed on appeal.

1. Pretrial and Trial Proceedings on Plaintiffs' Alternative Negligence and Negligence Per Se Claims.

¶28 In 2004, based on the separate disclosures of two siblings (20-year-old Holly and 17-year-old Peter), elders in the local Thompson Falls Congregation of Jehovah's Witnesses believed that the siblings' stepfather, who was also a local church elder, had sexually abused them several years earlier in private settings away from church grounds

17

and apart from church activities. *Nunez v. Watchtower Bible & Tract Soc'y of New York, Inc.* (*Nunez I*), 2020 MT 3, ¶¶ 2-4, 398 Mont. 261, 455 P.3d 829. Upon solicited advice from the legal department of a national affiliate (Watchtower Bible and Tract Society of New York, Inc.) that Montana law did not require them to report the alleged sexual abuse to law enforcement under an express statutory exception to the otherwise applicable mandatory duty, the local elders, in accordance with the doctrinal practices of their religion, instead formed a local church "judicial committee" that confronted the stepfather/elder and ultimately concluded that the sexual abuse allegations were true. *Nunez I*, ¶¶ 4-5. Based on that determination, the elders formally banished the abused siblings' stepfather from the congregation, with notice in the ordinary course to the church's chartering national affiliate (Christian Congregation of the Jehovah's Witnesses, Inc.). *Nunez I*, ¶ 5. A year later, however, the elders relented and reinstated the abusing stepfather as a member of the congregation. *Nunez I*, ¶ 5.

¶29 As subsequently alleged, but then unbeknownst to the local elders, the banished and later reinstated stepfather had also been similarly sexually abusing his minor step-granddaughter (Nunez) since 2002. *Nunez I*, ¶ 6. The abuse of Nunez allegedly started when she was five years old and continued until 2007 when she was ten. *Nunez I*, ¶ 6. Though not aware of the alleged sexual abuse of Nunez until sometime around 2014, the local elders were aware that her step-grandfather had previously abused his step-children and that Nunez was frequently present in his company at weekend church services after his reinstatement in 2005. *Nunez I*, ¶ 6.

18

¶30 In 2016, Nunez and her aunt (Holly) sued the local Jehovah's Witnesses congregation, and above-referenced national affiliates, for compensatory and punitive damages based on the local elders' alleged tortious failure to take sufficient action to protect them from sexual abuse by their stepfather/step-grandfather. As their predicate legal theories, they each asserted, in the alternative, separately-pled claims of negligence (breach of common law duty to use reasonable care under the circumstances) and negligence per se (breach of statutory reporting duty[1]) against the local Jehovah's Witnesses congregation, *inter alia*.[2]

¶31 Pursuant to M. R. Civ. P. 56, both sides subsequently filed various pretrial motions for summary judgment. As pertinent here, the Jehovah's Witnesses moved for summary judgment on the plaintiffs' respective negligence per se claims on the asserted ground that they were exempt from the otherwise applicable statutory reporting duty based on an express exception applicable to the doctrinal reconciliation practices of their religion. The plaintiffs opposed the motion but did not separately seek affirmative summary judgment to the contrary. After entry of a stipulated final pretrial order, but prior to trial, the District Court not only denied summary judgment on the Jehovah's Witnesses' motion, but further affirmatively granted the plaintiffs summary judgment that the statutory exemption did *not* apply and that local church elders were thus negligent per se based on a violation of the Montana statutory duty to report the suspected sexual abuse by the

---

[1] *See* § 41-3-201, MCA.

[2] They further asserted that named national affiliates of the local congregation were liable for the alleged negligence of the local congregation.

19

stepfather/step-grandfather.[3]   Without reference to the separately-pled common law negligence claim not at issue on the Jehovah's Witnesses' motion, the District Court's written judgment noted that the only matters left for jury determination on the plaintiffs' respective negligence per se claims were proof of the amounts of their respective compensatory damages claims.[4]  The case was thus postured for jury trial on the plaintiffs' respective negligence per se and common law negligence claims, as pled in the alternative.

¶32   However, at trial, upon inquiry from the District Court before opening statements as to necessary preliminary jury instructions, the plaintiffs unequivocally, without qualification or reservation of right, "dismissed their common law negligence claims" and proceeded on their respective negligence per se claims, as significantly narrowed by the prior summary judgment ruling. *Nunez I*, ¶ 8.  At the close of trial, the jury rejected Holly's negligence per se claim and awarded her nothing.  It returned a favorable verdict on Nunez's negligence per se claim, however, thus awarding her $4 million in compensatory damages, with an additional $31 million in punitive damages.  We later reversed the verdict on appeal, holding that, based on the record material facts not subject to genuine dispute, the Jehovah's Witnesses were statutorily exempt as a matter of law from the otherwise

---

[3] Nunez did not object, nor does she assert here, that the District Court either lacked discretion to grant her summary judgment *sua sponte* under these circumstances, or that it abused its discretion under M. R. Civ. P. 56 in doing so.

[4] The District Court's imprecise/ambiguous written summary judgment ruling erroneously indicated that the ruling not only relieved the plaintiffs of their burden of proving that the defendants were negligent, based on breach of the statutory reporting duty but also, as to Nunez, relieved her of her related burden of proving to the jury that the Jehovah's Witnesses failure to report their suspicions regarding the prior abuse was a compensable cause of her step-grandfather's subsequent abuse, and resulting harm, rather than his criminal conduct.

20

applicable mandatory reporting duty because they were acting in accordance with the doctrinal reconciliation practices of their religion. *Nunez I*, ¶ 33. We thus remanded for entry of summary judgment in favor of the Jehovah's Witnesses on the plaintiffs' negligence per se claims. *Nunez I*, ¶ 33. The implication of our narrow holding and reversal, *i.e.*, whether it ended the case in light of Nunez's prior voluntary abandonment of her co-pled alternative common law negligence claim, was not at issue on appeal.

2. Proceedings On Remand—Nunez's Motion for Leave to Amend to Restate and Revive Previously Abandoned Common Law Negligence Claim.

¶33 On remand, Nunez moved for leave to amend her complaint pursuant to M. R. Civ. P. 15(a) to restate and revive her previously abandoned common law negligence claim. She asserted that:

> the record in this case establishes that . . . [she] did not dismiss her common law negligence claim with prejudice. To the contrary, she proceeded to trial with a judicial finding that [the Jehovah's Witnesses] were negligent as a matter of law based on [violation of statutory reporting duty]. To have pursued the common law negligence theories, after the [c]ourt had already determined that [the Jehovah's Witnesses] were negligent, would have created confusion at trial, and would have made no practical sense because the jury was instructed at the outset that . . . the[y] . . . were negligent as a matter of law and . . . the [only] issue to be decided was the amount of damages to which . . . Nunez was entitled to recover . . . Nunez is entitled on remand to proceed to trial on her common law negligence claim.

Over objection of the Jehovah's Witnesses, and in a written judgment amended to correct a noted factual error in its original Rule 15 ruling, the District Court granted Nunez leave to amend her complaint to restate and revive the previously-abandoned common law negligence claim. The court reasoned that:

> It is clear from the record, that Nunez [detrimentally] relied on the correctness of the District Court [grant of summary judgment on her negligence per se claim], *but carefully dismissed her common law claim*

21

*without prejudice, so that she could reassert it.* Because the [court previously] granted summary judgment for Nunez on the per se claim, there was no need to pursue the common law claim. Nunez clearly relied on the legal correctness of the District Court's summary judgment order in deciding to dismiss the common law claim. *The parties* narrowed the issues for trial but *took care to dismiss the common law claim without prejudice, leaving the door open for Nunez to reassert it if necessary.*

(Emphasis added.) The Jehovah's Witnesses immediately petitioned this Court for exercise of supervisory control and reversal of the District Court ruling on extraordinary review.

    3. Supervisory Control—District Court Abuse of Rule 15(a)(2) Discretion.

¶34 Though an extraordinary remedy and no substitute for direct appeal in the ordinary course, supervisory control is necessary and proper here because the District Court is proceeding under a manifest mistake of procedural law for which ordinary appeal is inadequate and which will surely result in gross injustice if not immediately corrected. *See* M. R. App. P. 14(3); *Montana State Univ.-Bozeman v. Mont. First Judicial Dist. Ct.*, 2018 MT 220, ¶ 18, 392 Mont. 458, 426 P.3d 541; *Stokes v. Mont. Thirteenth Judicial Dist. Ct.*, 2011 MT 182, ¶¶ 6-8, 361 Mont. 279, 259 P.3d 754; *Truman v. Mont. Eleventh Judicial Dist. Ct.*, 2003 MT 91, ¶ 15, 315 Mont. 165, 68 P.3d 654; *Park v. Mont. Sixth Judicial Dist. Ct.*, 1998 MT 164, ¶ 13, 289 Mont. 367, 961 P.2d 1267; *Plumb v. Mont. Fourth Judicial Dist. Ct.*, 279 Mont. 363, 370, 927 P.2d 1011, 1015-16 (1996).[5] Regardless of the liberal

---

[5] The Court's deviation from our usually strict avoidance of unnecessary use of supervisory control is puzzling here given its conclusion that the District Court is *not* proceeding under a mistake of law, thus begging the question of why or on what basis ordinary appeal will not be an adequate remedy (*i.e.* why the Court is exercising supervisory control to comment on this issue) if the Jehovah's Witnesses have indeed failed to show that the District Court is acting under a mistake of law.

amendment standard of M. R. Civ. P. 15(a), the factual and legal rationales asserted by the District Court and this Court for not holding Nunez to her purely tactical decision to abandon her alternative common law negligence claim are unsound and indefensible under the particular circumstances of this case.

¶35     After the initial 21-day deadline for the opposing party to file a responsive pleading,[6] a party may amend a pleading only upon written consent of the opposing party or prior leave of court.  M. R. Civ. P. 15(a)(2).  Although the court should "freely" allow amendment "when justice so requires," M. R. Civ. P. 15(a)(2); *Hobble-Diamond Cattle Co. v. Triangle Irrigation Co.*, 249 Mont. 322, 325, 815 P.2d 1153, 1155 (1991), Rule 15(a)(2) does not warrant free amendment as a matter of right in every case. *Allison v. Town of Clyde Park*, 2000 MT 267, ¶ 20, 302 Mont. 55, 11 P.3d 544; *Stundal v. Stundal*, 2000 MT 21, ¶ 13, 298 Mont. 141, 995 P.2d 420.  Rather, the party seeking amendment must make an affirmative showing of good cause: (1) as to how or why, upon reasonable diligence, the party could not have earlier asserted or maintained the claim as subsequently requested; (2) why the amendment is warranted in the interests of justice; and (3) that the amendment will not cause unfair prejudice, burden, or expense to the opposing party.  *See Geil v. Missoula Irrigation Dist.*, 2004 MT 217, ¶ 22, 322 Mont. 388, 96 P.3d 1127; *Hawkins v. Harney*, 2003 MT 58, ¶ 39, 314 Mont. 384, 66 P.3d 305; *Stundal*, ¶ 12; *Peuse v. Malkuch*, 275 Mont. 221, 227, 911 P.2d 1153, 1156-57 (1996); *Lindey's, Inc. v. Professional Consultants, Inc.*, 244 Mont. 238, 242, 797 P.2d 920, 923 (1990) (citing

---

[6] *See* M. R. Civ. P. 15(a)(1).

23

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) in re Fed. R. Civ. P. 15); 6 Charles A. Wright & Arthur R. Miller, *Wright & Miller's Federal Practice & Procedure*, § 1487 (2004). We review grants or denials of leave to amend a complaint under M. R. Civ. P. 15(a)(2) for an abuse of discretion. *Harrington v. Energy W., Inc.*, 2017 MT 141, ¶ 10, 387 Mont. 497, 396 P.3d 114; *Edgewater Townhouse Homeowner's Ass'n v. Holtman*, 256 Mont. 182, 187, 845 P.2d 1224, 1227 (1993). As pertinent here, an abuse of discretion occurs if a court exercises granted discretion arbitrarily without conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice. *Harrington*, ¶ 10.

¶36 Here, in a twenty-five paragraph opinion, the Court gives amazingly short-shrift to the critical record colloquy between court and counsel before opening statements at trial, to wit:

> During a pretrial discussion about settling preliminary jury instructions, counsel for Nunez indicated Nunez was "fine limiting [her] negligence claim to the negligence per se claim." The District Court asked to clarify whether Nunez was dismissing her common law negligence claim and breach of fiduciary duty claim, to which counsel responded "Yes, your Honor." [Watchtower] did not object.

Opinion, ¶ 2. Based on that summary characterization, the Majority holds that "nothing in the colloquy between [court] and counsel before trial prevent[ed] the District Court from allowing Nunez to amend" her complaint to revive her common law negligence claim after losing on her negligence per se claim on appeal. Opinion, ¶ 13. However, neither the Court's summary characterization, nor the manifest after-the-fact mischaracterization of the record by Nunez and the District Court, are consistent with, much less supported by, the pertinent record, to wit:

24

[Court]: I'm going to read some preliminary instructions . . . and then opening statements. I am inclined to read plaintiffs' proposed [i]nstruction . . . which gives [the jury] notice that . . . the Court has already determined . . . as a matter of law the duty was breached and as to causation. The only concern I have with that instruction is *there are still causes of action for common law negligence* and for breach of fiduciary obligation. And I'm not sure . . . how that would be communicated to the jury so –

[Plaintiffs]: Your Honor, . . . my understanding is [that] if *you found negligence per se* . . . You found negligence. *We don't have a desire to submit any other negligence theories* as to 2004.

[Court]: . . . [But], as I understand it, there is still an outstanding common law negligence and breach of fiduciary obligation causes of action that the plaintiff continues to maintain.

[Plaintiffs]: Your Honor, yes. . . However, *we are fine limiting our negligence claim to the negligence per se claim.* So . . . *our theory is* [t]hat the mandatory reporter law [was] violated.

[Court]: And let me just ask a question about that. All right. . . . [B]ut what I understand you're saying is *you're dismissing . . . the common law negligence cause of action*?

[Plaintiffs]: *Yes*, your Honor.

[Court]: You're just *resting on the negligence per se* cause of action.

[Court]: *That's correct*, your Honor.

. . .

[Defendants]: . . . So *you're dismissing* your . . . *negligence* [*claim*] . . .

. . .

[Plaintiffs]: . . . [O]*ur sole negligence theory* is *negligence per se*. And _we're happy_ to tell the Court that *that's our sole negligence theory*.

[Court]: That certainly simplifies it. And does that go with regard to one or both of the plaintiffs, though?

25

[Plaintiffs]:    Both.

[Defendants]: So *my understanding*, your Honor, . . . is that -- *regardless of how it's characterized, they're dismissing negligence . . . and proceeding on a per se* with both plaintiffs.

Trial Tr. 140:14-143:15 (emphasis added).

¶37     The District Court's assertion that Nunez "carefully dismissed her common law claim without prejudice, so that she could reassert it" and that the "parties narrowed the issues for trial but took care to dismiss the common law claim without prejudice, leaving the door open for Nunez to reassert it if necessary," are clearly erroneous, without *any* basis in the contemporaneous record.  Nunez said absolutely *nothing*, either expressly or implicitly, indicating *any* intent or reservation of right to reassert the abandoned negligence claim in the event that her favored negligence per se claim might ultimately fail.  Nor did the Jehovah's Witnesses in any regard expressly or implicitly acquiesce, much less agree, that Nunez reserved the right to later revive the abandoned negligence claim if unsuccessful on her chosen negligence per se claim.  To the contrary, fairly read as a whole, the actual record clearly indicates that *both* parties were under the impression that Nunez was intentionally abandoning her common law negligence claim, without reservation of right, to go all-in on her negligence per se claim.  Nothing in the record supports a characterization that Nunez "carefully" stated any intent other than to unequivocally, absolutely, and unconditionally abandon her alternative common law negligence claim, without recourse.

¶38     Equally erroneous as justifications for allowing Nunez to revive the abandoned negligence per se claim are Nunez's assertions, echoed by the District Court, that, in light

26

of the favorable negligence per se ruling, it was senseless and would be confusing to the jury to continue to prosecute the negligence per se claim because the court would be instructing the jury "at the outset that the [Jehovah's Witnesses] were negligent as a matter of law" and that the only "issue to be decided was the amount of damages to which . . . Nunez was entitled to recover." As a preliminary matter, the District Court had yet to give *any* instruction to the jury when Nunez voluntarily abandoned the common law negligence claim before opening statements at trial. If Nunez had elected to prosecute both claims at trial in the alternative, as originally pled and still postured to proceed under the final pretrial order, the court necessarily would have had the task, as it had from the outset, to properly instruct the jury on the alternatively pled claims, thereby providing the jury a guide for navigating through the outstanding factual issues under both of the alternatively pled claims. Any difficulty or complexity in that task was solely the consequence of the tactical pleading and litigation strategy unilaterally chosen by Nunez, not the Jehovah's Witnesses or the court. Even in that regard, other than cursory assertion, neither Nunez, nor the District Court, have articulated how or why the court could not have adequately instructed the jury on both alternative claims as in any other case where a plaintiff elects to plead alternative claims or theories of liability.

¶39     Negligence and negligence per se are distinct claims or theories of liability predicated on distinct factual breaches of distinct legal duties. Thus, contrary to Nunez's overly-simplistic argument to the District Court, negligence per se and common law negligence are entirely different strains of negligence, even though either establishes the liability elements necessary to prove the otherwise similar causation and damages of each

27

type of claim.  Under modern rules of pleading and practice, plaintiffs may, and commonly do, plead such alternative claims or theories of liability in pursuit of compensatory damages for the same resulting harm compensable under either.  *See* M. R. Civ. P. 8(d)(2); *Folsom v. Mont. Pub. Employees' Ass'n, Inc.*, 2017 MT 204, ¶ 21, 388 Mont. 307, 400 P.3d 706 (internal citations omitted). Whether, or to what extent, the pleading and ultimate prosecution of alternative tort claims makes good sense or is optimal in a given case is unquestionably a strategic or tactical decision in the sole discretion of the plaintiff—not the court or the defendant.  To the extent that alternatively pled claims may complicate jury instruction, or be more potentially confusing to a jury than a single liability theory, the party solely responsible for that choice if it goes bad is the plaintiff—not the court or the defendant.  Accordingly here, Nunez certainly had the right to tactically abandon her alternative common law negligence claim at the last minute to simplify her theory of liability and burden of proof before the jury.  However, it is simply inaccurate and disingenuous for her and the District Court to suggest that she was unfairly prejudiced by that decision, that the decision was unfairly thrust upon her, or that she had no other reasonable choice.  In that regard, the District Court's cursory Rule 15(a)(2) rationale that Nunez had a *right* to rely on the court's negligence per se ruling and, after losing on appeal, was thus *entitled* to backup and retry the case on a different legal theory is wholly unsupported by any legal citation or analysis here.  Thus, without exception, *none* of the reasons asserted by Nunez, and echoed or amplified by the District Court, as justification for allowing her to revive her abandoned common law negligence claim after her chosen

28

theory of liability failed on appeal were valid or defensible under the law or circumstances of this case.

¶40 Thus, in affirming the District Court, this Court does not even reference the lower court's rationale for granting leave to amend, much less endorse or affirm its correctness. So handicapped, the Majority similarly resorts to cursory reference to the district court's broad discretion under M. R. Civ. P. 15(a), and then conspicuously skips over to an attempted distinction of this case from our holding in *Stanford v. Rosebud County*, 254 Mont. 474, 839 P.2d 93 (1992) (affirming denial of leave to amend to add new theory of liability after prior theory failed on appeal) on the stated ground that Jehovah's Witnesses did not specifically make a "prejudice argument" here. Opinion, ¶¶ 20-22. The attempted distinction is ineffectual, however, because we did not affirm the denial of leave to amend in *Stanford* based on resulting prejudice. *Stanford*, 254 Mont. at 476-78, 839 P.2d at 94-96. We affirmed the denial of post-appeal leave to amend "based on the time at which the motion [to amend] was made and the *lack of a showing of good cause why*" the alternative legal theory "was *not raised prior* to the [adverse] ruling" that defeated the plaintiffs' chosen claim. *Stanford*, 254 Mont. at 478, 839 P.2d at 96 (emphasis added). *Stanford* thus does not serve the purpose for which it is cited. To the contrary, it analogously manifests a similarly conspicuous lack of good cause for post-appeal amendment here. As in *Stanford*, Nunez has made no showing of good cause for her abandonment of her co-pled alternative negligence claim to aggressively go all-in on her negligence per se claim, except for a purely tactical decision that unfortunately did not pan-out.

¶41 Under these circumstances, it is sheer pedantic nitpicking for this Court to ignore the glaring lack of good cause for allowing the post-appeal revival of a previously abandoned alternative claim based solely on the hyper-technical ground that the Jehovah's Witnesses "have not made a prejudice argument." As a threshold matter of law, prejudice is not a relevant consideration under M. R. Civ. P. 15(a)(2) unless and until the movant first shows good cause in the interests of justice, upon the exercise of reasonable diligence, for not earlier pleading the new legal theory or predicate fact at issue. Here, this Court has neither endorsed the District Court's erroneous good cause rationale, nor articulated any other. Beyond that technical nicety, the resulting prejudice to the Jehovah's Witnesses of allowing Nunez to retry the case on a different legal theory after her chosen theory failed on appeal is clear, obvious, and indisputable without requirement for magic words or further explanation—the exorbitant cost and burden of unnecessarily having to again defend themselves in a second trial in a relatively-complex, high-dollar civil tort action for no reason other than their opponent's unnecessary tactical decision gone-bad.

¶42 Based on the record in *Nunez I* and here, I presume that Nunez's allegations of sexual abuse by her step-grandfather are absolutely true. I thus have nothing but sincere empathy for her, and sickening disdain and condemnation for his inexcusably horrible conduct and the resulting irreparable harm that he has caused her to suffer to date, and in the future. But the questions of whether the Jehovah's Witnesses failed to use reasonable care under the circumstances to protect her from her step-grandfather and, whether and to what extent any such failure was a compensable cause of the trauma he caused, remain genuinely disputed questions of fact to which Nunez has already had a full and fair

30

opportunity to litigate before a jury. Empathy is not a legal basis upon which to disregard the governing Rules of Civil Procedure, universally adopted for the purpose of ensuring fair and equal treatment and protection to all civil litigants, plaintiffs and defendants alike. While understandable, the Court's empathy-driven, result-oriented holding today is not only erroneous and indefensible under the circumstances of this case, but further establishes terrible precedent that will surely foster similar unfair civil trial practice until we are inevitably forced to reverse or limit it as anomalous in the future under a less emotionally-gripping fact pattern. This is a classic case of the old adage that bad facts make bad law. I dissent.

/S/ DIRK M. SANDEFUR

Justice Jim Rice joins in the Dissenting Opinion of Justice Sandefur.

/S/ JIM RICE

Justice Jim Rice, dissenting.

¶43 I join Justice Sandefur's dissenting opinion and would add that Plaintiff's reinstituted claim should also be barred under the doctrine of judicial estoppel. *See Big Sky Civ. & Envtl., Inc. v. Dunlavy*, 2018 MT 236, ¶ 30, 393 Mont. 30, 429 P.3d 258 ("Judicial estoppel is an equitable principle that bars a party from taking inconsistent positions of fact and law at different points in the same litigation[.]"). Given the particular actions and statements of the Plaintiff and the circumstances of the litigation, as well

31

outlined by Justice Sandefur, judicial estoppel is also an appropriate equitable remedy here to protect fundamental fairness.

/S/ JIM RICE

Justice Beth Baker, dissenting.

¶44 Though I do not join the Dissents in full, I agree that on the state of this record and the order appealed, the District Court abused its discretion in allowing amendment to reinstate the common law negligence claim. I would grant the petition and reverse.

/S/ BETH BAKER